UNITED CIGARETTE MACH. CO. v. WRIGHT.

(Circuit Court, E. D. North Carolina. September 9, 1904.)

No. 260.

1. EQUITY—PLEADING—MULTIFARIOUSNESS.

A bill to require an accounting from defendant as an agent is not multifarious because different and separate transactions are set out, all growing out of the agency, and a discovery and accounting demanded as to each, nor because as to some of such transactions, if stated alone, complainant would have a sufficient remedy at law.

**2. FEDERAL COURTS—EQUITY PLEADING.**

The federal conformity statute (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]), by its terms does not apply to equity causes, in which the federal courts are governed by the rules of equity pleading, regardless of the local practice.

**3. EQUITY PLEADING—ANSWER AND CROSS-BILL.**

An answer and a cross-bill in equity should be separate pleadings, although they may be filed under one cover.

**4. SAME—PLEA—SUFFICIENCY.**

A plea of the statute of limitations to a part of a bill alleging a distinct cause of action charging fraud and praying for discovery must, under the requirement of equity rule 32, be supported by an answer denying the fraud and the facts on which the charge is founded.

In Equity. On exceptions to plea and answer.

Burroughs, Noell & Haythe and Pou & Fuller, for complainant.
Harrison & Long and F. H. Busbee & Son, for defendant.

PURNELL, District Judge. At a former hearing of this cause a statement of facts and a decree overruling the demurrer were filed, as follows:

"Complainant, on January 4, 1904, filed a bill, the prayer of which is that an account of each and all transactions between complainant and defendant as agent of the Bonsack Machine Company and the complainant as successor and assignee thereof, and containing interrogatories looking to such accounting. Allegation 1 of the bill sets out the incorporation of the Bonsack Machine Company, its ownership of certain patents, and the contract with defendant as agent of said company in Asia, Africa, and certain islands, including the East Indies. (2) That defendant assumed the duties of such agent in the Orient, and from time to time, in accordance with the contract, rendered accounts according to the contract, which accounts were meager, but said statements accompanying settlements did not show accurately the amounts received from the sale of the Bonsack Machines and the expenses incurred, which had been deducted. (3) That in 1899 complainant was incorporated and organized in the city of London, England, and purchased from the Bonsack Machine Company its entire business, inventions, and letters patent for the world, except the United States and Canada, including the contract aforesaid, to which defendant assented, and acted as agent of complainant in the same territory. (4) That, in addition to the Bonsack machines and improvements complainant acquired and owned various other cigarette machines making various kinds of cigarettes, with the right to place the same in Asia, Africa, and in the islands aforesaid, and in 1900 entered into a contract with defendant, the effect of which was not to abridge the contract of 1888, except as to Japan, but constituted the defendant as exclusive agent for other cigarette machines, and entered into negotiations with the American Tobacco Company, largely interested in manufacturing cigarettes in Japan, with the view of securing to it the exclusive use of complainant's cigarette machines for Japan, the negotiations of which are set forth. (5) That since the incorporation of complainant, defendant has on several occasions turned over sums of money which he claimed belonged to complainant under the contract constituting said agency, which said statements give very meager information of the business done in his territory, leaving complainant ignorant of the details, which settlements and payments to a considerable extent were unaccompanied by vouchers, and complainants have on several occasions insisted on a fuller and detailed account, and setting forth the obligations resting on complainant as an English corporation, which information defendant has refused and continues to refuse to give and settle his accounts according to the contract between complainant and defendant. (6) Sets out in detail the transactions of the defendant as agent, fraudulent transactions in Manilla with Fred Wilson, a subagent, for the sale of the Bonsack Machines, defendant's refusal to account, and expenses incurred under the contract for securing patent rights and the payment of annuities to

keep patent rights alive, which amounts were paid in the currency of Japan and Great Britain, which defendant refused to settle. (7) That after the contract of 1900 between complainant and defendant negotiations were commenced by defendant with the American Tobacco Company with the view of giving to the latter the use of the cigarette machines of complainant's in Japan, and a verbal contract formulated, which was reported to complainant, and afterwards reduced to writing, which contract the defendant, however, refused to execute, reasons for which refusal are set forth. (8) Complainant is advised it has a right to have its agent to produce the books and papers relating to complainant's business covering the territory mentioned in the bill, including the business of the Bonsack Machine Company, its predecessor and assignor; for which accounting and settlement the complainant makes its prayer in due form.

"To the bill defendant filed a demurrer, and for cause alleges that it appears said bill is for distinct matters and causes, and in no way cognate or connected, and that said bill is altogether multifarious; and, further, that for the cause of action set up in the seventh section of complainant's bill it has a plain and adequate remedy at law, and said section, in which a distinct cause of action is set forth, does not contain any matter of equity.

"For the purpose of the present hearing the allegations of the bill are taken to be true, and, gathering the meaning and purposes thereof from the four corners of the pleading, the whole object of the suit is to secure an accounting of the agency. In Foster's Fed. Prac., at page 160, it is said: 'In no case has the Supreme Court of the United States reversed a decree on account of multifariousness in the bill. In general, it may be remarked that multifariousness is an objection much more often taken than sustained.' No such case has been cited, and the court has been unable to find one. 'It is impossible to lay down any general rule as to what constitutes multifariousness in a bill in equity. Every case must be determined by its own circumstances, and the court must exercise sound discretion.' Gaines v. Chew, 2 How. 619, 11 L. Ed. 402; Oliver v. Piatt, 3 How. 411, 11 L. Ed. 622; Barney v. Latham, 103 U. S. 215, 26 L. Ed. 514; Brown v. Guaranty Trust Co., 128 U. S. 410, 9 Sup. Ct. 127, 32 L. Ed. 468; Roberts v. N. P. R. R., 158 U. S. 29, 15 Sup. Ct. 756, 39 L. Ed. 873. 'Multifariousness does not exist in a case where it appears that the defendants are interested in all of the different questions raised in the record and the suit has a common object (Campbell v. McKay, 1 Myl. & C. R. 613); or to a bill stating a case rendering an accounting proper, even though it include a transaction which, if stated alone, would be a sufficient remedy at law (Bolles v. Bolles, 44 N. J. Eq. 385, 14 Atl. 593; 1 Pomeroy, 211; Tayloe v. Merchant's Fire Co., 9 How. 390, 13 L. Ed. 187; United States v. Union P. Co., 160 U. S. 19, 16 Sup. Ct. 190, 40 L. Ed. 319). As to the objection of section 7 of the bill, a complete answer will be found in United States v. Union P. R. R., 160 U. S., at page 51, 16 Sup. Ct. 209, 40 L. Ed. 580, where the court cites Boyce v. Grundy, 3 Pet. 210, 7 L. Ed. 655, with approval, and says: 'It is not enough that there is a remedy at law; it must be plain and adequate; in other words, as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.' The circumstances in each case must determine the application of the rule. Watson v. Sutherland, 5 Wall. 74, 18 L. Ed. 580. And in Oelrichs v. Spain, 15 Wall. 211, 21 L. Ed. 43: 'Where a direct proceeding in equity will save time, expense, and multiplicity of suits, and settle finally the rights of all concerned in one litigation,' the proceeding in equity is proper. And the setting up of a legal right of action will not vitiate a bill. The statements, therefore, in section 7, of facts which may constitute an action at law, are pertinent to the object of the bill, and not a violation of the rules of equity pleading.

"The authorities above cited are decisive of the only questions raised by the demurrer. The court will consider none other. True, other objections were discussed in the argument, such as estoppel, partnership, champerty and maintenance; and counsel for complainant expressed willingness to have the court consider a full discussion of the cause. District rule 3 is conclusive as to parol agreements of counsel, and, except where there is a written agreement filed, the court will not consider any question not raised by and in the pleadings. To do so would subject the court to criticism and parties litigant to inconvenience, if not frequent injustice. It is therefore ordered, adjudged, and

decreed that the demurrer herein be overruled and the defendant pay the cost; that the defendant answer the bill according to equity rule 34 by the rule day in May."

Afterwards, to wit, on June 29th, defendant filed what is entitled a plea to part and answer to residue of the bill, and on objection to such plea the cause is again before the court.

One objection to the answer, to wit, that the responses to the interrogatories propounded in the bill are not sufficient, may be disposed of, as it is understood after argument the counsel for defendant announced in open court they did not object to an order requiring the defendant to answer fully these interrogatories. This order will accordingly be entered, and the objections of complainant to the answer as specified are sustained. An order will therefore be entered requiring defendant to answer specifically the interrogatories propounded by complainant and set forth in the exceptions filed.

The further objection to the answer of the defendant, because it is otherwise evasive, and not responsive to the allegations of complainant's bill, is sustained after a careful examination of the bill and answer. The answer seems to have been filed under the impression that the code system of pleading obtained in the United States equity courts. In this court the rules in equity govern. The provisions of section 914, Rev. St. [U. S. Comp. St. 1901, p. 684], have been construed to mean conform to the practice in the state courts at the time the statute was enacted. It adopts only statutory procedure, and does not include constructions placed upon common-law remedies. The section only assimilates the practice as near as may be, but has no controlling influence in suits in equity. Sheffield Furnace Co. v. Witherow, 149 U. S. 574, 13 Sup. Ct. 936, 37 L. Ed. 853; Blease v. Garlington, 92 U. S. 1, 23 L. Ed. 521; U. S. v. American Bell Tel. Co. (C. C.) 29 Fed. 17.

Complainant also excepts to defendant's answer for the reason that it is and purports to be an answer and cross-bill combined in one paper or document. It is well settled that a cross-bill and answer should be separate, though they may be both in the same cover. Ritchie v. McMullen, 25 C. C. A. 50, 79 Fed. 522. The cross-bill referred to is not only in the same cover, but precedes and is the same paper, with only one caption; the answer following on a page containing a part thereof. The paper or plea is as follows:

"This defendant, by protestation not confessing or acknowledging all or any of the matters or things in the said complainant's said bill mentioned to be true in such a manner and form as the same are therein and thereby set forth and alleged, as to so much of the said bill as seeks to have any discovery from this defendant of all or any or either of the transactions or business done by this defendant touching or concerning any transaction or negotiation with the American Tobacco Company in regard to the transfer to said company of the exclusive license of all inventions of cigarette machinery in Japan, or which asks any recovery from this defendant on account of any violation of the contract between defendant and complainant of March 30, 1900, or which asks any accounting from defendant on account of any alleged failure of defendant to enter into or consent to a contract with the American Tobacco Company in the year 1903, as set forth in the bill, this defendant doth plead thereto, and for plea saith that under and by virtue of the laws of the state of North Carolina (which laws this defendant saith control and regulate the bringing of actions for an attempted enforcement of any alleged contract, or for damages or re-

covery on account of any breach thereof, or for any claim of the complainant in this or any other court for an accounting or other relief touching and concerning the matters set forth in said bill, and especially in paragraph 7 thereof) it is enacted that every action to enforce any claim or demand or supposed cause of action for and on account of matters and things of the nature set forth in paragraph 7 shall be brought within three years next after the cause of such action arose; and defendant saith that such supposed cause of action, if it arose at all, arose more than three years prior to the filing of this bill and the commencement of this action; and this defendant pleads the statute of limitations to all of the matters and things set forth in the said bill concerning the alleged failure or refusal of defendant to execute a contract with the American Tobacco Company as fully as if the same were here specifically recited item by item, and the said plea were herein specifically set up against each item thereof; and that the said claim or demand is a stale claim; and this defendant humbly prays judgment of this honorable court whether he ought to make any further answer to so much of the said bill as relates to the said alleged refusal or failure of the defendant to enter into said contract, and demanding damages from or an accounting with the defendant in regard thereto."

What is herein denominated a cross-bill is the plea of the statute of limitation of three years. It will be noted in the former decree the relief asked for in section 7 of the bill is admittedly a legal cause of action, which, on authorities cited, may be included in a bill asking equitable relief. The rule is that a plea in bar must be supported by an answer. Bates, Fed. Proc. §§ 235–238, and authorities cited, and equity rule 32:

"The defendant may, at any time before the bill is taken for confessed, or afterwards with the leave of the court, demur or plead to the whole bill, or to part of it, and he may demur to part, plead to part, and answer as to the residue; but in every case in which the bill specially charges fraud or combination, a plea to such part must be accompanied with an answer fortifying the plea, and explicitly denying the fraud and combination, and the facts on which the charge is founded."

The bill in the case at bar charges fraud, and seeks discovery, as held before. The answer not only does not support the plea but denies the allegations in section 7 of the bill, and pleads the statute of limitations to the whole bill. The plea might have been allowable if confined to the allegations of section 7 of the bill, which seeks damages on the cause of action therein set up, and was supported by an answer, but in the form filed it is not allowable under the rules which obtain in the equity courts of the United States.

Much of the argument in behalf of complainant was addressed to the effect and merits of the plea, but with these questions the court is not concerned at this time. The plea of the statute of limitations is a personal privilege in bar when properly pleaded. The plea as now presented must be stricken out.

An order will be entered in accordance with this opinion, requiring the defendant to answer fully by the rule day in October, or the bill be taken pro confesso. It is so ordered.