## TOWSON *v.* DENSON.

### Opinion delivered February 18, 1905.

1. STATUTES—CONSTITUTION.—It is the duty of courts to construe an act as it reads, if that can be done without involving absurdities. (Page 304.)

2. STATUTE OF LIMITATION—PAYMENT OF TAXES ON WILD LAND.—The act of March 18, 1899, providing that "unimproved and uninclosed land shall be deemed and held to be in possession of the person who pays taxes thereon, if he have color of title thereto, but no person shall be entitled to invoke the benefit of this act unless he and those under whom he claims shall have paid such taxes for at least seven years in succession, and not less than three of such payments must be made subsequent to the passage of this act," contemplates that payment of taxes on unimproved and uninclosed land shall constitute such a constructive possession as will, after payment for the required number of years in succession, ripen into title by limitation. (Page 305.)

3. STATUTE—EFFECT OF PROVISO.—When the enacting clause of a statute is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms. (Page 306.)

4. DUE PROCESS.—As a reasonable time was allowed after the act of March 18, 1899, was passed in which an interested party could prevent the consequences of the act from applying to his land, the act is not objectionable as a deprivation of vested rights or a taking of property without due process. (Page 307.)

5. STATUTE OF LIMITATION—PROVISOS.—*Semble* that the provisos in Kirby's Digest, § 5056, saving the rights of infants, married women and persons *non compotes mentis* should be extended to cases arising under the act of March 18, 1899. (Page 314.)

6. TAX FORFEITURES—LIMITATION.—Kirby's Digest, § 5061, providing, in effect, that no action for recovery of land forfeited for taxes shall be maintained "unless it appear that the plaintiff, his ancestor, predecessor or grantor was seized or possessed of the lands in question within two years next before the commencement of such suit or action," contemplates actual and not constructive possession. (Page 315.)

Appeal from Sevier Chancery Court.

JAMES D. SHAVER, Chancellor.

Affirmed.

*E. F. Friedell* and *S. R. Allen,* for appellant.

Section 6643 of Sandels & Hill's Digest is inoperative. 46 Ark. 100; 53 Ark. 204; 55 Ark. 192. The act of 1899 must be strictly construed. 70 Ark. 481; 59 Ark. 356; Sedg. Stat. Const. 188; Cooley, Const. Lim. 69; 56 Ark. 495; 7 Johns, 502. The act is retrospective. 5 Ark. 510; 6 Ark. 492. The act takes away private property without due process of law. 129 Mass. 561; 14 How. 501; 129 Mass. 562; Cooley, Const. Lim. 443; 20 Mich. 406. The benefit under this act cannot be derived until one has paid taxes under color of title for seven years, three of which must be after March 18, 1899. Wood, Lim. 119; 24 Ark. 385; 9 Ark. 416; 55 Ark. 383; 6 Ark. 492. Actual possession must unite with color of title and payment of taxes. 31 N. E. 430; 17 Wall. 596; 64 S. W. 621.

*Austin & Danaher, amici curiae,* for appellee.

Remedial statutes are to be liberally construed. 26 Am. & Eng. Enc. Law, 676; 30 Ark. 608; 101 U. S. 597; 26 N. J. Eq. 79; 30 Am. St. 254; 51 Am. St. 174; 123 U. S. 276; 140 U. S. 453; 148 U. S. 490; 65 Ark. 148. Restricting or qualifying clauses must be strictly construed, so as not to interfere with the scope of the principal clause. 41 Tex. 449; 40 U. S. 445; 139 U. S. 438; 93 U. S. 78; 4 Clark, 315.

*· H. F. Roleson, amicus curiae.*

Statutes are never construed so as to give them a retrospective effect. 6 Ark. 484; 14 Ark. 464; Black, Inter. Laws, § 103; 10 Serg. & R. 97; 57 Ark. 64; 24 Ark. 385; 26 Atl. 925. Where the will of the Legislature is clearly expressed, courts should adhere to literal expression. 35 Ark. 56; 56 Ark. 110; 48 Ark. 308; 36 Ark. 331. The general rule is that no statute is to have a retrospective construction. 15 Ia. 257; 10 Wend. 365; 6 N. Y. Ch. 726; 1 Wood, Lim. 41.

*John B. Jones, amicus curiae.*

Limitation laws are based on possession. 30 Ark. 655; 40 Ark. 243. Adverse possession of rough lands, mostly unfit for cultivation, is shown by proof of payment of taxes, blazing out lines, cutting timber, taxed in his own name and claiming to own and offering the land for sale. 151 Ind. 343; 98 Ia. 297. A party has no vested right in a rule of evidence. 64 Kan. 47; 25 Conn. 195; 8 Cyc. 924; 51 Ark. 419; 6 Wis. 257; 11 Wis.

432; 8 S. & R. 357; 9 Pa. 71. In considering the meaning of an act we must consider prior acts relating to the same subject. Endlich, Interpretation of Stat. § 43; 105 Pa. St. 610; 1 Pa. St. 353. Meaning of the word "deemed." 14 N. J. L. 446; 85 Cal. 80; 24 Pac. 648; 67 Kan. 648; 73 Pac. 920; 5 Fed. 11; End. Inter. Stat. § § 27, 29, 318, 70, 72.

*George Vaughan,* for appellee.

COHN, Special Judge. The principal question presented to the court in this case by the appellant relates to the construction to be given to an act of the General Assembly of the State, entitled "An act for the protection of those who pay taxes on land," approved March 18, 1899, which is in the following words:

"That unimproved and uninclosed land shall be deemed and held to be in possession of the person who pays taxes thereon if he have color of title thereto; but no person shall be entitled to invoke the benefit of this act unless he and those under whom he claims shall have paid such taxes for at least seven years in succession, and not less than three of such payments must be made subsequent to the passage of this act." Acts 1899, p. 117; Kirby's Dig. § 5057.

It is conceded by both sides to this litigation that the act must be construed by itself, and that if this court shall decide in this case that the construction contended for by appellee is correct, and that the act as so construed is valid, then the decree below must be affirmed. If, on the contrary, the court holds in favor of the construction contended for by the appellant, or that the act is invalid, then the decree must be reversed, and the prayer of the complaint must be denied.

Accepting the issue, as thus presented, we enter upon a discussion of the proper construction to be given to the act referred to.

It is our duty to construe the act just as it reads, if that can be done without involving absurdities. Guided by this elementary and primary rule of construction, we find, first, "that unimproved and uninclosed land shall be deemed and held to be in possession of the person who pays taxes thereon if he have color of title thereto." If the terms of the act ended here,

there could be no controversy respecting its meaning, for it would manifestly be the legislative intent that he only should be deemed to be in possession of unimproved and uninclosed land who, having color of title to the land, paid taxes thereon for the given year or years, the possession for each year corresponding legally with each year's taxes that had been assessed and paid.

This meaning, however, we are told, is altered by the words of the act which follow the part of the act just quoted. Is this true? We give, secondly, that part of the act which is in these words, viz., *"but* no person shall be entitled to invoke the benefit of this act unless he and those under whom he claims shall have paid such taxes for at least seven years in succession, and not less than three of such payments must be made subsequent to the passage of this act." Are we to read this part of the act so that the only effect of the payments of taxes for seven successive years shall be that the taxpayer will obtain a possession which must be repeated seven times in the same manner before any title by constructive possession can accrue to him? Or are we to read the act so that the last part of it only makes it a condition to a constructive possession for each year that the taxpayer shall have paid taxes for seven successive years? In other words, is it not the true construction of the act to say that the last part of it deprives the taxpayer of the effect of a possession for each year unless the taxes are paid by him for seven successive years, and no more? The majority of the court favor the latter construction, as being a correct construction of the language employed by the General Assembly. When the Legislature said that, as to the taxpayer under color of title who paid taxes on unimproved and uninclosed land, such payment should legally constitute possession of such land, it is not reasonable to suppose that they meant anything different from what they declared, merely because they afterwards said that this legal effect each year should be taken away if there were not at least seven successive yearly payments, three of which must occur after the enactment of the law. That construction is consonant with the terms of the act, and it avoids the injustice of making seven years' payment of taxes amount, as to wild lands, to no more than a single act of trespass under the provision governing limitations in actions for the recovery of real estate. For it is

the settled doctrine of this court that a trespass can start the running of that provision. *Ferguson* v. *Peden,* 33 Ark. 150; *Logan* v. *Jelks,* 34 Ark. 547; *Organ* v. *Memphis & L. R. Railroad Company,* 51 Ark. 235, 270.

The construction we disapprove, when carried to its legitimate conclusion, would require seven years' successive payments of taxes and seven additional years of actual possession, or seven times seven years,—that is forty-nine successive years'—payments of taxes under the act, in order to create title by adverse possession. This we think unreasonable.

Moreover, that part of the act, which we have, for convenience of discussion, called the last part of the act, and which begins with the word "but," is, we think, in the nature of an exception or proviso or limiting clause to the general provision which precedes it. 1 Words & Phrases, p. 926; 5 Am. & Eng. Enc. (2d Ed.) 79; 6 Cyc. p. 261; *Leggett* v. *Firth,* 132 N. Y. 7, 11. And, as, according to a well-settled rule of construction, "when the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause which does not fall fairly within its terms" (*McRae* v. *Holcomb,* 46 Ark. 306, 310), even if there were doubt regarding the effect of that part of the act, it would have to be resolved in favor of that construction which we have adopted. See also *Minis* v. *United States,* 15 Peters, 423, 445; *Gould* v. *New York Life Insurance Co.* 132 Fed. 197.

If there is any good policy in encouraging the payment of taxes upon unimproved and uninclosed lands, and we think there is, then this act, which does not countenance fraud or imposition, ought not to be deprived of its effect by any narrow or unreasonable construction. Nor can we find any objection to the act because it requires owners of unimproved and uninclosed land to see to it that the taxes thereon are properly paid.

But it is contended that the act should be construed so as not to be retrospective, and that to give it the construction contended for by appellee would be to deprive the appellant of vested rights. As the act expressly provides that, as to instances occurring before the enactment of the law, taxes paid for four successive years, in addition to payments for taxes occurring at least three more years after its date, shall be determinative, it follows

that ·the act is in plain terms retroactive as to the four years. And as a reasonable time was allowed, after the act was passed, in which an interested party could prevent the consequences of the act falling upon him, there is no objection to the act upon the ground that it deprives the appellant herein of any vested rights. *Sadler* v. *Sadler,* 16 Ark. 628; *Fee* v. *Cowdry,* 45 Ark. 410; *Beard* v. *Dansby,* 48 Ark. 183; *Wheeler* v. *Jackson,* 137 U. S. 245; *Campbell* v. *Haverhill,* 155 U. S. 610, 615; *League* v. *Texas,* 184 U. S. 156. And we do not think that anything said in the case of *Alexander* v. *Gordon,* 101 Fed. Rep. 91, 95, s. c. 41 C. C. A. 228, militates against the views announced in this opinion. The decision in that case, in so far as it is in accord with the decisions of this court, meets with our approval. Compare with that decision *Gates* v. *Kelsey,* 57 Ark. 523; *Woolfork* v. *Buckner,* 60 Ark. 163; *Finley* v. *Hogan,* 60 Ark. 499; *Saranac L. & T. Co.* v. *Comptroller,* 177 U. S. 318; *Wheeler* v. *Jackson,* 137 U. S. 245; *Wilson* v. *Standefer,* 184 U. S. 399; Cooley, Const. Lim. 364.

Holding the views announced in this opinion, we think that the chancellor construed the act in question properly, and that it ought to be enforced; and the decree rendered in the court below is hereby affirmed.

HILL, C. J., (dissenting.) Prior to the act in question, it had been the settled law of this State for many years that "neither conveyances, nor color of title, nor payment of taxes, nor all combined can give title to land under the statute of limitations. There must be proof of adverse possession for the requisite time." *Calloway* v. *Cossart,* 45 Ark. 81. It was evidently to change the status of wild and uninclosed land in this respect that the act was passed. The first clause says "that such lands shall be deemed and held to be in possession of the person who pays taxes thereon, if he have color of title thereto." Had the act stopped there, then the rule in *Calloway* v. *Cossart* would stand changed, and seven years of such possession under the general act, or five under the judicial sales act, or two under the tax deed act, would have given title under the statutes of limitations. But the act does not stop there, and meaning must be given to all the statute, not merely a part thereof. "But no person shall be entitled to invoke the benefit of this act unless he and those under whom he claims shall have paid such taxes for at least

seven years in succession." The benefit of the act is in making payment of taxes possession of wild and uninclosed lands, in order to invoke the statute of limitations. The act is for the "protection of those who pay taxes," and its first clause declares that the person who, under color of title, pays taxes "shall be deemed and held to, be in possession." Therefore it is clear that the benefit of the act is in making payment of taxes of such land equivalent to possession or possession itself. Then the act provides that this benefit shall not be invoked until the person (or those under whom he claims) shall have paid such taxes for at least seven successive years. When the person pays for seven years, then he invokes the benefit of the act, and is then —and not until then—in possession.

To change the rule in *Calloway* v *Cossart,* so as to make each payment possession, and seven payments ownership, would be a radical change from existing law; while changing the act only to the extent of seven years' payment starting the running of the statute is a reasonable change, and a fair one. Before this act a century of taxpaying did not start the statutes of limitations, and now, under the construction of the majority, one payment puts into possession, and gives possessory rights to the person paying against any person except the true owner, and seven payments divests ownership and invests it in him who has thus paid the taxes.

In Colorado there is a statute which provides that whenever a person having color of title shall pay taxes on vacant and unoccupied land for five years, "then he shall be the lawful owner of such vacant and unoccupied land."

The opinion of the majority construes this statute, which says that after such payment he shall be deemed in possession, to be of the same effect as one which declares such payments shall make the person paying the lawful owner, when the act only says he shall be in possession. The act further provides that not less than three of the payments must be subsequent to the passage of the act. The majority construe that clause as intending to give the owner a reasonable time after its passage to avoid the consequences of the act, and thereby save any vested right.

It is thought that a more reasonable construction is that

such clause was intended to bring the beneficence—real or sup-
posed—of the act into operation earlier, and thereby putting
into possession the person who has already paid for four years,
if he shall pay for three more, thus completing the seven pay-
ments which make possession, so as to start the statute of
limitations running in his favor.

Mr. Justice RIDDICK concurs this construction.

### ON REHEARING.

Opinion delivered April 15, 1905.

*J. T. Coston, amicus curiae.*

The act in question should not be construed by itself. 40
Ark. 452; 60 Ark. 129; 45 Ark. 391; 3 How. 551; 38 S. W.
84; 11 Wheat, 386; 21 How. 464; 51 S. W. 158; 44 Cent. Dig.
2859. The date of the enactments will be looked into, and the
one last in time will prevail. 40 Ark. 452; 16 Fed. 752; 60 Ala.
213, 249. The history of the passage of an act may be looked
into to determine the legislative intent. 5 Ark. 613. What is
possession? 40 Ark. 371; 110 Ala. 474; 49 Ark. 274; 43 Ark. 486;
Black, Inter. Laws, 85. The statute is unconstitutional. 42 Ark.
91; 38 Miss. 424; 13 Mich. 329. The statute is not to be con-
strued retrospectively. Black, Inter. Laws, 259; 1 Wood, Lim.
41; 7 Cent. Dig. 135, Constructive possession follows the title.
60 S. W. 651; 49 Ark. 266; 43 Ark. 469; 65 Ark. 600; 31 Ark.
337; 60 Ark. 129.

*J. W. House* and *Charles T. Coleman, amici curiae.*

The correct rule of construction is that where the will of the
Legislature is clearly expressed, the courts should adhere to the
literal expression of the enactment. 24 Ark. 487; 6 Ark. 9.

*H. F. Roleson, amicus curiae.*

When no exception is made in the statute, none can be sup-
plied by the courts. 53 Ark. 418. Possession follows the title,

in the absence of any actual possession adverse to it.  57 Ark. 523; 27 Ark. 217.  A proviso in a statute is strictly construed, and takes no case out of the enacting clause that does not come fairly within its terms.  15 Pet. 445; Black, Inter. Laws, 270; 24 How. Pr. 247.  The act should not be construed retrospectively.  1 Wood, Lim. 41; 6 Ark. 485; Black, Inter. Laws, 254; 31 Ch. Div. 403; 1 Bl. Comm. 86; 29 Pa. St. 113; 55 N. J. L. 394; 22 N. W. 614; 14 Minn. 526.  The court, in the construction of the act, should take into consideration all acts *in pari materia,* and especially those passed at the same term.  6 Ark. 9; 3 Ark. 556; Black, Inter. Law, 204; Endlich, Inter. Stat. § 53.

*B. H. Crowley* and *W. S. Luna, amici curiae.*

Whenever any statute has received judicial construction, a subsequent act will be construed as being used in the sense the judiciary used it, the meaning being clear.  46 Ark. 108; 72 Ark. 601.  Only one person can be in actual or constructive possession at a time.  49 Ark. 271.  A person paying taxes on wild and unimproved land for seven years is in possession of the land, and the original owner is barred.  60 Ark. 502, 168; 67 Ark. 412.  That there is no exemption in favor of infants is no objection to the statute.  53 Ark. 421.  The policy of the law is to protect those who pay taxes on land of defaulting owners.  37 Ark. 107; 49 Ark. 194; 34 Ark. 541.

COHN, Special Judge.  We held in our former opinion that the phraseology of the act of March 18, 1899, indicated the obvious intent of the lawmakers to be to make the payment of taxes by one holding color of title equivalent to possession; that is, that a payment of a year's taxes was equivalent to a year's possession, provided that at least payments of taxes for seven successive years, of which three had to occur after the act was passed, were made.  We could see no other proper construction to give to the language, "shall be deemed and held to be in possession of the person who pays taxes thereon," etc.

It is said now that this construction is faulty, because thereby we have decided that the holder of a color of title obtains a perfect title, or a conclusive title to the land in question; that is, land which is uninclosed and unimproved.  We do not think we decided as much as is claimed.  And it is urged that the act is not an act of limitation nor one conferring title.  It

appears digested in the chapter on "Limitations," and if a statute provides "that unimproved and uninclosed land shall be deemed and held to be in possession of the person who pays taxes thereon if he have color of title thereto," what other sensible meaning can we attribute to this than that each year's payment shall be equivalent to a year's possession, unless we are prepared to say that, no matter how many yearly payments of taxes a person may make, whether one or ten or a hundred, it all only amounts to a single act of possession? Those who contend for this construction are not consistent. They admit that after seven years' payments have been made, of which three are made after the act took effect, this possession can ripen into title by further successive payments of taxes for seven more years. Now, it is impossible to find any act which sustains this contention, except the one under consideration; yet, by the argument they make, they deny this meaning to the provision which alone is capable of sustaining it. If the provision does not mean what we have said it means, it could not mean what the others say it means; that is, it cannot at one and the same time have two essentially contradictory meanings.

It may be that by reason of this construction some hardships may obtain; but it is our duty to enforce the act so as to carry out the legislative intent, leaving to the legislative body the remedy.

The construction we have adopted is borne out by that part of the act which we have compared to an excepting clause. This, in saying that seven successive payments of taxes shall first be made, three of which shall accrue after the passage of the act, gives manifest support to such construction. Why say that seven successive years' payments at least shall be made, if a year's payment was not to be deemed to be the equivalent of a year's possession? What other possible criterion for a period of possession can we adopt without rendering both the general provision and the proviso absurd? If each year's payment was not to be the equivalent of a year's possession, then why did the proviso say that at least seven years' payments would first have to be made? Why refer to years' payments at all in that connection if they were not to be criteria?

It is obvious that a single payment of one year's taxes would have been the equivalent of possession, if the proviso had not

been adopted. Was it intended that seven years' payments should amount to no more than one? Obviously not. Hence it is clear that each year's payment of taxes was intended, and must have been intended, to mean the equivalent of each year's possession. Either that, or any number of payments, not less than for seven successive years, would only amount to an instant possession, that is a possession for a single instant. And then the act would serve no purpose whatever.

This construction is further sustained by the language of another act passed at the same session of the Legislature. This act was passed on the 28th day· of March, 1899, and it deals with the subject of confirmation of titles to real estate. The act does not relate solely to wild or uninclosed and unimproved land. It appears to contemplate a process in a chancery court having for. its purpose the quieting of titles. Whether such will be its effect ultimately need not be determined, and is not decided in this case. Amongst other things this act provides:

"Section 5. If the petitioner cannot show a perfect claim of title to any particular tract or tracts of such lands, it shall be held to constitute a *prima facie* title, if he shall show that he and those under whom he claims have had color of title to the land for more than seven years, and that during that time he or those under whom he claims have continuously paid the taxes thereon.

"Section 6. The decree in the cause shall not bar or affect the rights of any person who claims by, through, under or by virtue of any contract with the petitioner, or who was an adverse occupant of the land at the time the petition was filed, or any person who within seven years preceding had paid the taxes on the land unless such person shall have been made defendant in the petition and duly summoned to answer the same."

This act was not called to our attention on the former hearing of this cause, and therefore no reference was made thereto in the former opinion of this court. We held, however, in a case heretofore decided, that this act did not relate to tax titles. Ex parte *Morrison,* 69 Ark. 517. But, assuming that the act is supplementary, in a sense, to that of March 18, 1899 (that is, that it furnishes a remedy to one who comes within the terms of the act of March 18, 1899, and seeks to avoid the possibility

of a disregard of such persons' rights), what do we find? We find that the framers of the act speak, in section 5 of the act, of one who "shall show that he and those under whom he claims have color of title to the land for *more* than seven years, and that during that time he and those under whom he claims have continuously paid the taxes thereon;" but in section 6 of the same act that they speak of "any person who *within* seven years preceding had paid the taxes on the land." In section 5 "color of title" is mentioned as a prerequisite, while in section 6 nothing is said about "color of title." In section 5 allusion is made to parties who might bring suits; in section 6 allusion is made to those against whom suits were brought. Now, it can hardly be believed that merely because the language used in the one section referred to persons who for "more" than seven years had paid taxes, and in the other the language used was "within" seven years, or because in one section the words "color of title" were used, and not in the other, the Legislature intended in any way to change the terms of the act which had previously been passed on March 18, 1899, relating to the manner of acquiring the right to uninclosed and unimproved land. Neither of the sections of the later act referred to, in terms, speaks of uninclosed and unimproved lands. And to put a rigid construction on the language used would obviously be improper. If applicable, the act of March 28 could have meant no more than that the person or persons who had acquired rights under the act of March 18 should have the benefit of the act of March 28, either as complainant or defendant, in a suit to confirm and to quiet title.

Thus viewed, these two sections sustain the construction given to the act of March 18 by the majority of this court. It is true that section 5 of the act says that the effect of the payment of seven years' taxes shall "constitute a *prima facie* title." But section 6 does not use similar language. There can be no manner of question that the later act shows the legislative intention in passing the act of March 18 to have been to make seven successive years' payments of taxes under color of title to be equivalent to seven years' possession, and the equivalent of a *prima facie* title, at least. But from the fact that it used the term *"prima facie"* only in one section and not in the other it is clear that that term was not used as a positive legislative declaration of the meaning of the Legislature in passing the earlier act. That

no attempt was made to re-enact or affect the earlier law of March 18 in the later act of March 28· is further indicated by the failure to notice, in the later act, that the earlier act required at least three years' payments of taxes to postdate the passage thereof. We might well take it that the words *"prima facie,"* when used in section 5 of the act of March 28, were used without precision, and did not necessarily indicate the legislative understanding as to the meaning of the act of March 18; else why did not the framers of the act use the same words in section 6 to indicate the character of right the person or persons therein referred to were supposed to have, under the act of March 18?

But the reasoning of the former opinion of this court, and the issues in this case, do not require us to hold that the title acquired under color of title by payments of taxes for seven successive years (of which three are subsequent to the passage of the act of March 18, 1899), is more than *prima facie,* until it is settled to be more by a decree or judgment of a court in a proper cause. In this case the *prima facie* effect given to these matters has not been overborne by anything in the record which has been called to our attention.

We cannot appreciate the argument based on a play upon the words "color of title," whereby it is made to appear that the only consistent way of construing the act is to give it the interpretation which we have heretofore disapproved. We hold that color of title goes as far in giving title under the act of March 18 as it would if actual possession were based upon it, and no farther.

Counsel contend that the act of March 18, if construed without reference to the general act of limitation, does not furnish sufficient in itself to create an adverse title. So far as other legislation is germane to the purposes of the act, it may be referred to for the purpose of arriving at its meaning. And we have done so in assuming in our former opinion that when the purchaser has paid taxes for seven successive years, as required by the act of March 18, he thereby becomes a possessor for seven years, and the holder of a title, to the extent that seven years' actual possession under statutes previously in force gave a title, provided that the conditions as to color of title properly obtained, and no fraud or overreaching had been practiced, or other improper act had been done. And the effect of this will

be to extend to cases arising under the act of March 18, 1899, the provisions of the provisos of section 5056 of Kirby's Digest.

We are told, quoting from one of the briefs before us, that "if the color were a tax deed, two payments would perfect the title under the statute of limitations applicable to tax deeds." Section 5061, Kirby's Digest, is only section known to us that relates to this subject. This refers to the seizin or possession of the ancestor of one who claims "lands by virtue of a purchase thereof at a sale by the collector or Commissioner of State Lands, for the non-payment of taxes, or who may have purchased the same from the State by virtue of any act providing for the sale of lands forfeited to the State for non-payment of taxes, or who may hold such lands under a donation deed from the State." The two years' seizin or possession referred to could not be worked out under the act of March 18, because, according to the argument of counsel, possession under the act did not mean anything but an instant of possession. If it is contended that the act means that each year's payment of taxes after seven years had expired is equivalent to a year's possession, and that two payments of taxes for two years is sufficient, this is a deduction from the same act, which counsel had said did not justify such a contention. We are unable to understand how possession based on yearly payment of taxes may not and at the same time may mean yearly possession counted by the yearly taxes which have been paid. If the act meant yearly possession corresponding to yearly payments *for any purpose,* then the construction we have given is the only sound one. The same may be said as to the other sections of Kirby's Digest referred to by counsel. Not one of these contemplates that a constructive possession shall flow from payment of taxes. We have to go to the act of March 18, 1899, to obtain this result. We find no other act which does so. And if for any purpose the act is held to mean that the yearly payment of taxes shall be and is equivalent to yearly possession, it must mean also that this will be so during the seven years that possession is ripening into title, referred to in the proviso of the act. For our part we do not think that the words "seizin or possession," used in section 5061, Kirby's Digest, refer to constructive possession for the time mentioned under the act of March 18.

We do not find anything in the act of March 18 to render it unconstitutional. It does not take one man's property and give

it to another, any more than ordinary acts relating to adverse possession and limitation of actions do so. We have decided that, in our opinion, the act was not unconstitutional because it was retroactive or because it deprived any person of his property without due process of law. The right of the State to have its taxes promptly paid is as important as the right of the individual to be protected in his property. Taxes are the price paid for such protection. Those only who have color of title obtain rights of possession under the act. And he who claims to be the real owner can prevent this by himself paying taxes or taking actual possession of and improving the lands.

Counsel say that the act does not in terms speak of adverse possession. But the clear and indubitable inference deducible from the language used is that a person who complies with the act shall by himself be deemed in possession. Of course, if the fact should turn out to be that, by reason of some act of the taxpayer, others besides himself were in constructive possession, then he would not be in *exclusive* constructive possession. But the act clearly deals with an exclusive constructive possession, and one which is capable of ripening into an exclusive constructive possession for seven years, and thereby an adverse title. Such a title is not possible where two are in constructive possession under the act adverse to each other; nor where one is in actual possession of the property so as to deprive it of the character of unimproved and uninclosed land.

After having heard counsel and carefully considered the briefs filed herein, and taking time to weigh well our conclusions, we feel constrained to say that we feel no reason to change our view in this case. And the petition for reconsideration will, therefore, be denied.

