RACHELS v. STECHER COOPERAGE WORKS.

Opinion delivered May 2, 1910.

1. CORPORATIONS—AUTHORITY TO BUY LAND.—A Missouri corporation, authorized by its charter to carry on the cooperage business and to buy, manufacture and sell staves, and by statute to purchase and

hold such real estate as its purposes may require, is authorized to purchase timber land or land upon which to build and operate its manufacturing plants. (Page 12.)

2. SAME—WHO MAY INQUIRE AS TO AUTHORITY TO BUY LAND.—Where a corporation is authorized to acquire lands, no one but the State can inquire whether any particular real property, or how much, may be necessary to enable it to carry on the business for which it was organized. (Page 12.)

3. FOREIGN CORPORATIONS—AUTHORITY TO SUE.—Kirby's Digest, § 830, providing that no foreign corporation which shall fail to comply with the statute authorizing such corporations to do business in the State "can maintain any suit or action, either legal or equitable, in any of the courts of this State, upon any demand, whether *arising out of contract or tort*," does not apply to a suit by a foreign corporation to quiet the title to land, where it does not appear that plaintiff's deeds, relied upon by it as color of title, were executed in this State. (Page 13.)

4. PLEADING—LEGAL CONCLUSION.—An answer denying that a certain deed conveyed title or color of title states merely a legal conclusion, and is insufficient. (Page 13.)

5. FOREIGN CORPORATIONS—CONSTRUCTIVE POSSESSION BY PAYING TAXES.—A foreign corporation, owning unimproved and uninclosed land in this State, is entitled to the benefit of Kirby's Digest, § 5057, giving it constructive possession by reason of paying the taxes thereon, notwithstanding it failed to designate an agent within the State upon whom process could be served during the years it was paying the taxes. (Page 14.)

6. LIMITATION OF ACTIONS—ABSCONDING DEBTOR.—A foreign corporation which, while doing business in this State, neglects to designate an agent upon whom process may be served is not an "absconding debtor" within Kirby's Digest, § § 5077, 5088. (Page 14.)

7. APPEAL AND ERROR—PRESUMPTION AS TO CHANCELLOR'S FINDINGS.—The presumption on appeal is that the findings of the chancellor were based upon competent and relevant testimony until the contrary appears. (Page 16.)

8. SAME—HOW MATTERS BROUGHT UP.—Where no objection to the competency of evidence in a deposition appears in the deposition itself, in the decree of the court or by bill of exceptions, a statement showing such objection, inserted in the transcript by the clerk, will not be noticed on appeal. (Page 16.)

9. CLOUD ON TITLE—LACHES.—A suit to remove a cloud upon the title to land will be barred by laches where for more than twelve years the party asking relief has asserted no title to the lands and paid no taxes thereon, during which time the lands have greatly increased in value. (Page 17.)

Appeal from White Chancery Court; *John E. Martineau,* Chancellor; reversed.

STATEMENT BY THE COURT.

This is a suit by appellee under sections 649 and 650 of Kirby's Digest to quiet title to various tracts of land described in the complaint, consisting of —— acres, and situated in township 7 north, range 5 west, in White County, Arkansas. The appellee exhibits with its complaint the deeds under which it claims, and alleges as follows:

"Its grantors in all of said deeds and conveyances were at the time of the execution and delivery of said deed or deeds to this petitioner the fee simple owner or owners to [of] the lands so conveyed to it; and your petitioner alleges that it at least acquired by said deeds and conveyances set out in this petition, and referred to as exhibits (from A to N, inclusive), a color of title to each and every tract of land hereinbefore and hereinafter described; that no one is in possession of said lands, or any part thereof, claiming title thereto adversely to this petitioner; and if any person or persons other than this petitioner has, or claims to have, any interest or title in and to said lands, or any part or tract thereof, this petitioner has no knowledge of same. This petitioner would further state that it not only has a fee simple title and a *prima facie* title to said lands, but, as aforesaid, has a color of title thereto, and has had such color of title to all of said lands for more than seven years last past; and that it has for more than seven years last past in succession paid the taxes on each and every tract of said lands, claiming to be the owner thereof, and claiming title thereto."

Appellant filed an "intervention," in which he denies that appellee is the owner of any of the land described in its petition. Appellant then proceeds to set up title in himself to certain of the tracts described in appellee's petition. He deraigns title thereto through mesne conveyances from the government, and further avers as follows:

"Fourth. This intervener admits that certain deeds set out in petitioner's petition were executed by the various parties named, describing various tracts of land mentioned in petitioner's petition, but denies that said deeds conveyed title to the said Stecher Cooperage Works, and denies that said deeds conveyed to it any right, title or color of title.

"Fifth. This intervener admits that various parties, companies or corporations have caused tax receipts to be issued,

showing payment of the taxes asessed against said lands, but denies that the Stecher Cooperage Works acquired any right, title or interest in said lands because of said tax receipts, or by any pretended payment of taxes.

"Sixth.    The intervener admits that the Stecher Cooperage Works is a Missouri corporation, but denies that as such it has any right to acquire lands in the State of Arkansas; denies that the petitioner, the Stecher Cooperage Works, has a right to plead statutes of limitation or laches, or to in any manner acquire, claim or hold titles to land in the State of Arkansas.

"Wherefore this intervener, J. N. Rachels, would ever pray that the petition of the petitioner, the Stecher Cooperage Works, be dismissed for want of equity, and for such other and further orders as this honorable court may, in its wisdom, find right and equitable."

By amendment to the "intervention" appellant set up that the various tax deeds and other deeds through which appellee claimed were void and a cloud on appellant's title.

Appellee answered the intervention, denying that appellant had title to the lands claimed by him, and setting up that appellee had patent to a certain tract describing it, and as to a certain other tract appellee alleged that it had been in actual adverse possession for more than fourteen years continuously, paying the taxes thereon. As to this tract it pleaded the seven years statute of limitations. The appellee then alleged as follows:

"Petitioner states that said Pierce and the heirs of the said W. T. Jones, from whom the intervener claims a pretended original title to said lands and their grantees, including the intervener herein, have not paid taxes on said land for over twenty-five years last past; that the said H. A. Pierce and W. T. Jones and heirs long since abandoned said lands, and ceased to set up any claim or title thereto, because of the fact that they were practically worthless, and at the time had no market value; that at the time they were induced to make quitclaim deeds to the grantor of the said B. C. Rhodes, they claimed no title to said lands, and quitclaimed same for a trifle upon the representation, and with the distinct understanding, that they had no title thereto, and that said quitclaim deeds were

wanted for· the purpose of perfecting the then paramount title to said land. Petitioner states that said lands are now valuable, and worth from $10 to $15 per acre, and it is because of this fact that petitioner's title is being disturbed by the present intervener, and were heretofore disturbed by his grantor, B. C. Rhodes. Petitioner states that the intervener's claim herein ought not to be heard and ought not to be entertained; that in equity and good conscience he is barred by laches, which, in addition to constructive possession of said lands by payment of taxes for more than seven years, petitioner specially pleads."

The cause was heard upon the pleadings, title deeds, records, tax receipts, and depositions of ·witnesses, and from these the court found the facts to be "that the lands were granted to the State by the United States as swamp lands; that various parties obtained title to these lands from the State; that petitioner obtained deeds to the lands; that the lands were not in petitioner's possession, were wild; that petitioner paid the taxes thereon, on a part from 1894 to 1908; on a part from 1891 to 1908, and on the remainder from 1895 to 1908, inclusive of all cases. That these taxes were paid by petitioner while claiming title to the lands, and under color of title.

Upon these facts, as found by the court, it rendered judgment dismissing the intervention and quieting title in appellee to the lands described in its petition. Appellant seeks by this appeal to reverse that judgment.

*Rachels & Robinson,* for appellant.

The right of appellee to hold land is controlled by the law of Missouri. 71 Ark. 379; 90 Tex. 533; 149 Mo. 57; 109 U. S. 527; 155 Mo. 95; 13 Pet. 588; 51 Mich. 145; 16 N. W. 314; 68 L. R. A. 815; 25 Mich. 214; 22 N. W. 505; 25 Am. & Eng. R. Cas. 32; 6 Kans. 255; 4 So. 235; 23 Ill. 609; 14 Pet. 122; 43 Am. & Eng. Corp. Cas. 459; 72 Ill. 50. The charter being silent on that point, appellee cannot hold land in Missouri. 2 Idaho 26; 32 Mo. 305; 34 Conn. 541; 7 N. Y. 471; 144 Mo. 588; 21 Pa. 22; 5 Conn. 572; ·38 N. W. 43; 64 L. R. A. 399; 4 Mass. 140. If any doubt arises as to its power, that doubt must be solved against the corporation. 45 L. R. A. 680; 43 Mo. 353; 135 N. Y. 404; 10 Mo. 559; 31 Mo. 185; 108 Mo. 559;

16 How. 534; 9 Mo. 507.; 130 Mo. 10; 23 How. 435; 64 L. R. A. 376; 24 L. Ed. 1036; 32 L. Ed. 842.

A contract of a corporation that is outside the object of its creation is of no validity.  82 Mo. App. 661; 43 L. Ed. 1007; 42 L. Ed. 198; 41 Id. 821; 50 Miss. 403; 73 Mo. 135; 35 L. Ed. 55; 3 Wend. 573; 10 Wis. 230; 37 Cal. 543.  Such contracts cannot be made good by laches or ratification.  132 Fed. 721; 35 L. Ed. 67; 139 U. S. 24; 25 L. Ed. 950; 101 U. S. 71; 41 L. Ed. 822; 165 U. S. 538.  And the question of its validity may be raised by any interested party.  132 Fed. 721; 174 U. S. 370; 37 Cal. 543; 53 N. Y. 363; 101 Mass. 57; 120 Ill. 447; 11 N. E. 899.  The phrase "such land as the purposes of the corporation shall require" signifies such land as will give it the room it requires.  3 Zab. 514; 133 U. S. 21; 66 S. W. 485; 1 Dutch. 316; 43 N. Y. 137; 33 So. 84; 45 Mo. 212; 9 Rich. L. 236.  Appellee acquired no title to the land.  60 Ark. 120; 35 S. W. 898; 101 Mo. App. 569; 116 Ill. 375; 197 Mo. 507; 71 Ala. 60; 33 N. E. 166; 103 Ala. 371; 15 So. 944; 41 L. Ed. 817; 100 Va. 438; 77 Ark. 203; 60 Ark. 120; 192 Mo. 413; 55 Ark. 625; 19 A. B. R. 361; 124 Mo. App. 349; 8 Gray 206; 6 Biss. 420; 41 Ind. 1; 25 Wend. 648; 37 Mo. 398; 20 O. 283; 97 S. W. 636; 95 S. W. 344; 35 S. W. 898.  In a suit to quiet title, complainant must show title.  82 Ark. 294; 80 Ark. 31; 45 So. 480; 77 Ark. 338; 74 Ark. 387; 44 Ark. 436.  Delay on the part of the defendant is not available to the plaintiff unless it amounts to an estoppel *in pais.*  89 Ark. 19; 88 Ark. 395; Id. 478; 155 U. S. 314; 13 N. J. Eq. 19; 13 App. Cas. 543; 88 Ark. 404; 75 Ark. 194; 81 Ark. 301.  The statute of limitations will not run in favor of one who absents himself from the State so that process cannot be served on him.  158 Pa. 521; 7 Am. Dec. 739; 16 Id. 290; 19 Am. Rep. 293; 94 N. C. 231; 24 Ark. 556; 47 Ark. 170.

*J. H. Harrod* and *J. G. & C. B. Thweatt,* for appellee.

Parties cannot avoid or neglect paying taxes for 25 years or more and then, when the land becomes valuable, come in and have their rights recognized and established.  81 Ark. 353; *Id.* 432.

WOOD, J., (after stating the facts).  First.  It was shown that appellee was a Missouri corporation chartered "to carry on the cooperage business for pecuniary profit or gain, and to

cut, buy, manufacture and sell staves, and to manufacture and sell casks, barrels, kegs and all other articles whatsoever belonging to the cooperage business."

Appellant contends that, such being the express powers granted to appellee, under the laws of Missouri, which must control, appellee was prohibited from holding any lands, and that its acquisition of lands was *ultra vires* and consequently void.

Under the Revised Statutes of Missouri (1899), § 971, corporations may "hold, purchase, mortgage, or otherwise convey such real and personal estate as the purposes of the corporation shall require, not exceeding the amount limited in its charter." . See also section 851, Kirby's Digest. The power to "manufacture" "staves," "casks," "barrels," "kegs," and all other articles whatsoever belonging to the cooperage business necessarily carries with it the power to acquire the timber out of which such articles are manufactured. As it might be impossible to purchase timber without the land upon which it grows, the power to acquire timber also, in such case, would necessarily include the power to buy the land upon which the timber grows. The power to manufacture also necessarily implies the power to obtain lands upon which to build and operate the manufacturing plants. Powers that are essential to the exercise of the powers expressly granted are necessarily implied from those expressly granted, and are "as much granted as what is expressed." *Thomas* v. *West Jersey Railroad*, 101 U. S. 71. "It is a well settled rule of construction of grants by the Legislature to corporations, whether public or private, that only such powers and rights can be exercised under them as are clearly comprehended within the words of the act, or derived therefrom by necessary implication, regard being had to the object of the grant." *Minturn* v. *Larue*, 23 How. 435; *Carroll* v. *Campbell*, 108 Mo. 559; *State* v. *Lincoln Trust Co.*, 144 Mo. 586; *State* v. *Murphy*, 130 Mo. 10; *Huntington* v. *Savings Bank*, 96 U. S. 388.

Therefore, since the power to acquire land is comprehended in the charter of appellee, it was acting within the scope of the powers conferred upon it in obtaining lands, and the quantity was not limited in its charter. It being determined that the acquisition of land is within the charter powers of appellee, the inquiry whether any particular real property, or how much,

may be necessary to enable appellee to carry on the business for which it was organized is a matter between the State and appellee. "That is a matter which is not subject to investigation, and can not be called in question by appellant in this suit." *Bowman* v. *Trainor*, 93 Ark. 435.

Second. It was shown that appellee had not complied with the statute authorizing foreign corporations to do business in this State (section 825, Kirby's Digest) until August 20, 1907. Appellant contends that appellee, because of this failure to comply with the statute, acquired no color of title by its deeds and no title by its payments of taxes. The result of the failure of appellee to comply with the above statute precludes it from enforcing any demand it may have against any of the citizens of this State growing out of the contract or tort. Section 830, Kirby's Digest. But appellee by its suit to quiet title is not seeking to enforce any demand growing out of the contract with appellant or out of any tort committed by appellant against appellee. The deeds which give appellee color of title are executed contracts conveying to appellee the lands in suit. As we have seen, the taking of these deeds on the part of appellee was not *ultra vires*. For aught shown to the contrary in the evidence, as abstracted by appellant, these deeds may have been delivered to appellee in Missouri. The contracts conveying the lands to appellee may have been consummated by the payment of the purchase money and the delivery of the deeds there. If so, the deeds were valid, even though appellee at the time may have been engaged in business in this State without having complied with the statute. Section 825, Kirby's Digest.

It is not alleged in the intervention of appellant that the deeds under which appellee claims color of title were made in this State, while appellee was doing business here in violation of the statute *supra;* nor is it shown by the proof that these deeds were made in this State. As we said in *White River Lumber Co.* v. *Southwestern Improvement Association*, 55 Ark. 625: "For aught that appears," these deeds "may have been made in a foreign State in the course of a business lawfully done there, and in the absence of a showing the law will not imply facts disclosing the illegality of the contract." Appellant denies that the deeds conveyed to appellee any right, title or color of title. But that allegation is only a legal conclusion, and is far

from stating any facts showing that the deeds were void. We do not mean to hold that the deeds could not give color to appellee, even though it had been shown that they were executed in this State.

Since there is nothing in the law or appellee's charter prohibiting it from obtaining deeds to land in this State, and since appellee is not seeking to enforce any demand against appellant growing out of contract or tort, a majority of the court is of the opinion that appellant, in this suit, can not invoke the provisions of sections 829 and 830, Kirby's Digest, to have the deeds which appellee obtained through other parties declared null and void. But, even if appellant could make such proof, he has not done so. Therefore, conceding that appellee was doing business in this State contrary to the provision of the statute *supra*, at the time the deeds under which it claims color of title were executed, still, as appellant could not show in this suit that these deeds were void, it follows that appellee is entitled to whatever benefits may be derived therefrom as color of title under section 5057 of Kirby's Digest.

Third. That section gives title by limitation to a person who has color of title to uninclosed and unimproved lands and who has paid taxes thereon for seven years in succession, at least three of the payments having been made after the passage of the act March 18, 1899. *Towson* v. *Denson,* 74 Ark. 302. See also *Price* v. *Greer,* 76 Ark. 429; *Wyse* v. *Johnston,* 83 Ark. 520; *Updegraff* v. *Marked Tree Lumber Co.,* 83 Ark. 154.

The chancellor found that appellee had acquired title to the lands in suit by payment of taxes under the above statute. Appellant contends that appellee can not have the benefit of the above statute because it failed to designate an agent upon whom process could be served during the seven years it was paying the taxes, and thereby became subject to the provisions of sections 5077 and 5088 of Kirby's Digest. These statutes refer to absconding debtors and other persons who have fraudulently concealed themselves to prevent the commencement of an action against them. Limitations do not begin in such cases until the residence or whereabouts of the absconder has been discovered, and the commencement of the action is for that reason no longer prevented. But these statutes and the authorities based on such statutes have no application, even by analogy,

to the case at bar. Appellee, although a foreign corporation, and doing business in this State without designating an agent, would still have the right to pay taxes on lands to which it had color of title. There is nothing in section 5057, *supra,* or any other statute prohibiting foreign corporations, although doing business in this State without designating an agent, from paying taxes on lands which they own or to which they have color of title. Even if the failure to designate an agent, in a sense, would be absconding, the act of paying taxes would be notice to the true owner of the foreign corporation's constructive possession. It is, under the statute, a taking of the possession. *Towson* v. *Denson, supra.* It affects the *res,* and starts this special statute of limitations. If, when paid by another before April 10, it is a wrong to the true owner, as contended by appellant, under section 7053, giving the owner till that day to pay his taxes, the wrong can be easily prevented by him, or corrected by proper application to the collector. The true owner whose taxes have been paid by a foreign corporation can not claim that, inasmuch as such foreign corporation is not subject to process here, or is evading the service of process, the statute of limitations under section 5057 *supra* does not begin to run. "Taxes are *glebae ascripti*—serfs of the soil—a charge which follows the land in whosesoever hands it may go." *Coats* v. *Hill,* 41 Ark. 149, 152; *Seldon* v. *Dudley E. Jones Co.,* 89 Ark. 234-38.

If not paid, the proceeding to collect them is not against the owner, but against the land itself. Sections 7084-5, Kirby's Digest. Therefore it is wholly immaterial whether the owner be resident or non-resident, absconding or otherwise. The payment of taxes under the conditions prescribed by section 5057 starts the limitation therein contained against the owner. If the taxes are paid, as prescribed by the statute, seven years in succession at any time when taxes are payable, the party paying acquires the title, whether he makes the payments within one year of each other or not. *Price* v. *Greer,* 89 Ark. 300. Each payment constitutes the equivalent of possession contemplated by the statute, and continues that possession until the next payment in succession, and so on until seven years shall have elapsed from the time of the first payment. *Towson* v. *Denson, supra.* See also *Updegraff* v. *Marked Tree Lumber Co.,* 83 Ark.

154; *Sibly* v. *England,* 90 Ark. 420. There is no allegation in the complaint that the lands were "unimproved and uninclosed." But the chancellor found that the lands that were not in the possession of appellee, were "wild." That finding is sufficient to show that the lands were "uninclosed and unimproved." There was competent evidence to sustain this finding. But appellant contends that it was introduced over his objection, and therefore can not be considered. The presumption is that the findings of the chancellor recited in his decree were based upon competent and relevant testimony until the contrary appears.

There is no objection noted in the deposition itself to the testimony by which this fact was established. There is no recital in the record proper or in the court's decree of any such objection, and there is no bill of exceptions showing that such objection was made. A recital in the transcript to that effect by the clerk simply cannot be considered. It does not show proper authentication of the objection. *Tharpe* v. *Western Union Tel. Co.,* 94 Ark. 530; *Snyder* v. *State,* 86 Ark. 456; *Murphy* v. *Citizen's Bank of Junction City,* 84 Ark. 100; *Beecher* v. *State,* 80 Ark. 600; *Beecher* v. *Beecher,* 83 Ark. 424. The same rule applies to the decitals in the transcript as to objections made to the introduction of other evidence.

The tax receipts in evidence show that for some of the years, during the seven, the taxes were paid by the "Stecher Cooperage Works," and that for others they were paid by the "Stecher Cooperage Company." Appellant contends that these might have been different corporations. But the chancellor found that the taxes were paid for seven years in succession by the "Stecher Cooperage Works." It was shown that the taxes were paid by the agent of "Stecher Cooperage Works," appellee. Throughout the depositions the lands are referred to as the lands of the "Stecher Cooperage Works." It is obvious from the entire testimony that "Stecher Cooperage Company" in the tax receipts meant "Stecher Cooperage Works," and that the insertion of the former instead of the latter was merely a misprision of the collecting officer. The finding of the chancellor that the taxes were paid by the Stecher Cooperage Works was not clearly against the preponderance of the evidence, but on the contrary is according to such preponderance. Such payment under the conditions prescribed by section 5057 gave appellee,

not a *prima facie,* but a perfect title, and the court was correct in so holding.

Fourth. As to the following tracts: N. W. ¼ and W. ½ S. W. ¼, Sec. 10, S. W. ¼ S. W. ¼ and S. E. ¼ Sec. 25, E ½ S. E. ¼ and S. E. ¼ N. E. ¼ Sec. 26, W. ½ N. E. ¼ Sec. 27 and N. E. ¼ N. E. ¼ Sec. 28, all in Twp. 7 N., R. 5 W., learned counsel are incorrect in stating that there is no allegation in the complaint that appellee has or ever had color of title to these. The allegation set forth in statement shows that appellee did allege color of title to these, and exhibited the deeds, and the deeds were therefore properly introduced. As to the S. E. ¼ Sec. 21, Twp. 7 N., R. 5 west, the evidence showed that it had been in the adverse possession of appellee for more than seven years. As to the N ½ S. W. ¼ Sec. 25, Twp. 7 N., R. 5 west, the tax receipts in evidence show that it was paid on by appellee more than seven years. For some of the years it was paid on under the above description, and for other years under the following description: "E. of R. S. W.," sec. 25. This latter description correctly designated the lands. From this description they could readily be ascertained on the sectional plats of the government survey as the S. W. ¼ east of river in section 25. As to the N. E. ¼ N. E. ¼ Sec. 28, Twp. 7 N., R. 5 W., the appellant's abstract of the evidence states the following:

"The taxes on the northeast quarter of the northeast quarter of section 28, in township 7 north, of range 5 west, were paid for the years, on the dates and by the persons named herein:

| Year. | Day and Month. | Receipt Issued to |
|---|---|---|
| 1900—April 10 | | Stecher Cooperage Co. |
| 1901—April 11 | | Stecher Cooperage Co. |
| 1902—May 5 | | Stecher Cooperage Works |
| 1903—January 20 | | Stecher Cooperage Works |
| 1904—March 11 | | Stecher Cooperage Works |
| 1905—April 18 | | Stecher Cooperage Works |
| 1906—April 24 | | Stecher Cooperage Works |
| 1907—January 6 | | Stecher Cooperage Works" |

This shows payment on the above tract for more than seven years in succession.

Fifth. Appellant could have no affirmative relief on his intervention. Appellee alleges in its answer to the intervention that appellant and those under whom he claims had not paid

taxes on the lands for over twenty-five years and that they had enhanced in value to the sum of ten or fifteen dollars per acre. These allegations were not denied by pleading or refuted by proof. The testimony shows that appellee had been paying taxes on all the land for more than twelve years, and on some of it as long as seventeen years. During this time the land had greatly enhanced in value. In the very recent case of *Chancellor* v. *Banks*, 92 Ark. 497, we said:

"There are cases in which the owner of land had failed to pay taxes on the same for many successive years exceeding the statutory period of limitations of seven years, and another, claiming the land, had paid the taxes thereon for such time, and in the meantime the land had greatly enhanced in value, and in which this court held that a court of equity will not grant the owner relief on account of laches; and in which it so held obviously for the reason that it would be unjust to permit the owner to induce another, by his silence and failure to act, to pay the taxes until the lands have become valuable or greatly increased in value, and then enforce his right. *Clay* v. *Bilby*, 72 Ark. 101; *Turner* v. *Burke*, 81 Ark. 352; *Craig* v. *Hedges*, 90 Ark. 430." See also other cases cited in the opinion.

The court therefore did not err in dismissing the intervention. The decree of the lower court is in all things correct, and it is therefore affirmed.