UPDEGRAFF *v.* MARKED TREE LUMBER COMPANY.

Opinion delivered May 6, 1907.

1. DECREE—PERSONS CONCLUDED.—A decree rendered in a proceeding by the Board of Directors of the St. Francis Levee District to foreclose its lien for taxes, under the act of February 15, 1893, was *in personam,* and bound only the parties to the record and their privies. (Page 157.)

2. CONFIRMATION DECREE—EFFECT.—The effect of a proceeding under Kirby's Digest, § § 661-675, to confirm a judicial sale for levee taxes conducted under the St. Francis Levee Act of February 15, 1893, was not to vest title in the purchaser, but only to confirm such title as the purchaser would have obtained if the sale had been regular. (Page 157.)

3. LIMITATION OF ACTIONS—PAYMENT OF TAXES.—The payment of taxes on unimproved and uninclosed land for seven years in succession is insufficient to give title by limitation where suit is commenced by the true owner of the land before the expiration of seven years from first payment. (Page 158.)

4. EQUITY—DOCTRINE OF LACHES.—While it is true that the length of time during which a party may neglect to assert rights and not be guilty of laches varies with the peculiar circumstances of each case, and is subject to no arbitrary rule like the statute of limitations,yet, in the absence of supervening equities calling for the application of the doctrine of laches, equity will by analogy follow the law. (Page 160.)

5. CONFIRMATION DECREE—EFFECT.—As a proceeding under the St. Francis Levee Act of April 2, 1895, to enforce a lien for delinquent taxes is *in rem,* a decree confirming such sale cures all defects therein as against all persons. (Page 161.)

6. PLEADING—FAILURE TO ANSWER CROSS-COMPLAINT—WAIVER.—Plaintiff's failure to answer defendant's cross-complaint is waiver by defendant where he goes to trial without insisting upon an answer. (Page 162.)

Appeal from Mississippi Chancery Court; *Edward D. Robertson,* Chancellor; reversed in part.

*Geo. W. Murphy, Wm. M. Lewis* and *Chas. T. Coleman,* for appellant.

When the proceedings are against a certain person named as defendant, then, whether the service be actual or constructive, it is notice to him only, and the decree affects only his interest in the land, and no one else is bound by it. Waples, Proc. in Rem, § 628; 93 U. S. 274; 130 U. S. 493; 77 Ark. 477. A

quitclaim deed will not pass an after-acquired title. 13 Ark. 422; 59 *Id.* 299; 72 *Id.* 80; 76 *Id.* 417. The confirmation act does not apply to cases where the owner of the land was not a party to the confirmation decree. 59 Ark. 15; 24 *Id.* 519; 74 *Id.* 572. The confirmation decree only adjudged that the levee sale was valid, but had no effect on those holding rights that were not affected by such levee sales.

*N. F. Lamb* and *W. J. Lamb*, for appellees.

A confirmation decree can not be attacked collaterally. 10 Pet. 479; 1 Pet. 340; 2 *Id.* 169; 3 Ark. 361; 22 *Id.* 118; 24 *Id.* 519; 52 *Id.* 400; 59 *Id.* 15; 62 *Id.* 421; 75 *Id.* 176; 117 U. S. 269. Seven years' payments of taxes on wild and unimproved land by one having color of title have also been held to defeat the owner. 86 S. W. 661.

*Geo. W. Murphy, W. M. Lewis* and *Chas. T. Coleman*, in reply.

The confirmation decree is only a validating decree; it does not purport to divest or cancel the title of others; it simply operates on the sale, after which all inquiry as to the validity of the sale is cut off. 75 Ark. 427. A patent from the State can not be assailed collaterally. 52 Ark. 156; 120 Fed. 819. The party claiming the benefit of the statute of limitation must show payment of taxes for seven successive years, that the land was vacant and unoccupied during that time, and that during that time he had color of title. 1. Wall. (U. S.) 637. The seven years statute begins to run at the time of the first payment of taxes after the execution of the deed, and not from the time the taxes were due. 47 Ill. 477; 96 *Id.* 415; 99 *Id.* 372; 183 *Id.* 538; 99 N. W. 855. The payment of taxes by one cotenant does not put the statute in motion as against the other cotenants. 2 Tex. Civ. Cas. 316; 69 Miss. 833; 95 Mich. 619; 142 Ill. 143; 13 Pa.. St. 276. A tenant in common can not acquire the interest of his cotenant by purchase at a sale of the whole for delinquent taxes. 55 Ark. 104.

McCULLOCH, J. This is a suit in equity, instituted by plaintiff, George T. Updegraff, against defendant, Marked Tree Lumber Company, to quiet the title to an undivided one-half interest in sections 29, 30, 31, 32 and 33, township 13 north, range 9

east, Mississippi County. Plaintiff sets forth the following chain of title:

(1)    United States to State of Arkansas; swamp Land grant of September 28, 1850.

(2)    State of Arkansas to M. P. Suggett; certificate of entry in 1858.

(3)    M. P. Suggett to W. R. Rightor; assignment of certificate of entry.

(4)    W. R. Rightor, by his assignee in bankruptcy, to J. J. Hornor; deed to an undivided one-half interest in said five sections executed March 2, 1868.

(5)    Executors of J. J. Hornor, deceased, to the plaintiff George T. Updegraff; deed executed February 18, 1905, under power contained in the will.

(6)    State of Arkansas to heirs of M. P. Suggett; patent issued April 24, 1903.

(7)    Heirs of M. P. Suggett to R. E. Lee Wilson; deed executed in 1903.

(8)    R. E. Lee Wilson to Geo. E. Scott; deed executed in 1904.

(9)    Geo. E. Scott to plaintiff, Geo. T. Updegraff; deed executed February 24, 1905.

The defendant claims title as follows:

1.    By decree of the chancery court of Mississippi County, rendered at the spring term, 1895; in the case of Levee Board *v.* Arkansas Land Company, under which sections 29, 30 32, and 33 were sold by the commissioner to Harry DeWolf; and by degree rendered at the same term in the case of Levee Board *v.* Jno. S. Toof, under which section 31 was sold to Jno. B. Driver; and by mesne conveyance from Harry DeWolf and Jno. B. Driver to John T. and W. A. Fuller.

2.    By confirmation decree rendered at the March term, 1902, in the proceeding of Jno. T. and W. A. Fuller, *Ex parte,* purporting to confirm the levee sales to DeWolf and Driver.

3.    By mesne conveyance from Jno. T. and W. A. Fuller to the defendant, the Marked Tree Lumber Company.

4.    By payment of taxes for seven years under color of title.

5.    On account of laches of the plaintiff in instituting suit.

It will be observed from the foregoing that the plaintiff shows a complete chain of title, and the questions presented are whether that title has been divested by the decree of the chancery court in the levee board suit or by the confirmation decree, or by the statute of limitations on account of the payment of taxes or by laches of the. plaintiff. These questions will be considered in the order named above.

Plaintiff's claim to section 31 stands in a different attitude from that of the other sections, and will be separately treated in this opinion. Defendant's claim of title to sections 29, 30, 32 and 33 begins with the sale under decree of the chancery court in the suit of the St. Francis Levee Board v. Arkansas Land Company. The decree in that case was a personal one against the Arkansas Land Company, pursuant to the act of February 15, 1903, authorizing that board to sue in the chancery court to foreclose its lien for taxes. It was not a proceeding *in rem* nor in the nature of a proceeding *in rem;* it was purely personal, and bound only the parties to that record. The Arkansas Land Company was not the owner of the land, and was not in privity with the plaintiff's chain of title. Therefore plaintiff's title was not affected by that decree. *Wilson* v. *Gaylord, 77* Ark. 477.

Counsel for appellee concede this much. The confirmation proceedings in 1902 were instituted and prosecuted to a final decree under the statute (§ § 661-675, Kirby's Digest) providing for confirmation of sales of land for taxes and sales made pursuant to judgments and decrees of courts of record. We are therefore to consider whether the effect of this decree was to confirm and make perfect the title of the purchaser under that sale, or whether it merely confirmed the validity of the judicial sale. In other words, whether the title or merely the sale was confirmed; for, as the purchaser took no title under the sale, a confirmation of the sale only would confer no title upon him.

We are of the opinion that the decree did not confirm the title or vest any title in the purchaser, but merely declared the sale to be valid, and only perfected such title as the purchaser would have got if the sale had been regular. *Buckingham* v. *Hallett,* 24 Ark. 519; *Lonergan* v. *Baber,* 59 Ark. 15; *Smith* v. *Thornton,* 74 Ark. 572; *Mason* v. *Gates,* 82 Ark. 294;

*Boynton* v. *Ashabranner,* 75 Ark. 427. The case of *Smith* v. *Thornton, supra,* involved the right of a minor to redeem from a confirmed tax sale, and the question was squarely presented whether confirmation cut off the right of redemption. The court decided that it did not cut off such right, and in the opinion said: "The decree only adjudged that the tax sale was valid and cut off all such interests that were affected by a valid tax sale, but had no effect upon those holding rights that were not affected by such tax sale." This court in *Boynton* v. *Ashabranner, supra,* in discussing the effect of a decree confirming a tax sale, said: "The theory rests upon the proposition that the owner of the land has in the confirmation proceedings had his day in court to contest the validity of the sale, and is barred from thereafter asserting its invalidity on any ground. The effect of the decree is not to confer title to the land, but merely to declare the sale thereof valid." In case of *Mason* v. *Gates,* the question was presented whether a confirmation decree could render valid a tax sale made pursuant to a void statute, the court holding that the decree could in effect only declare that the statute had been complied with, and, if compliance with the statute could not pass title, the confirmation added nothing to its validity. We think these cases are conclusive of the question now presented, as the decree in the suit against the Arkansas Land Company did not and could not affect plaintiff's title. The confirmation of the sale under that decree added nothing to . its force.

The parties entered into a stipulation to the effect that appellee and those under whom it claimed title had paid taxes on the lands under color of title seven times, beginning with the payment of March, 1898, for the taxes of 1897. This suit was commenced after the seventh payment, but before the expiration of the full period of seven years from the date of the first payment. The question is therefore presented whether the payment of taxes on unimproved and uninclosed lands seven times is sufficient to give title by limitation where suit is commenced before the expiration of seven years from the first payment. The statute reads as follows:

"Sec. 5057. Unimproved and uninclosed land shall be deemed and held to be in the possession of the person who pays

the taxes thereon if he have color of title thereto, but no person shall be entitled to invoke the benefit of this act unless he and those under whom he claims shall have paid such taxes for at least seven years in succession, and not less than three such payments must be made subsequent to the passage of this act."

This statute was construed in the case of *Towson v. Denson,* 74 Ark. 302, to mean that the payment of taxes should constitute such possession as would, after payment for the required number of years in succession, ripen into title by limitation, and that the possession commenced with the first payment. The question was not presented in that case as to whether the full period of seven years must have elapsed before such possession amounted to complete investiture of title. It will be observed that the act merely declares that the person who pays the taxes on unimproved and uninclosed lands shall be deemed to be in possession thereof if he have color of title. The statute does not undertake to fix the period of limitation, but merely declares the continuous payment of taxes under color of title to be possession, and leaves the general statute of limitations applicable thereto. The only proviso or condition in the act is that the person who pays the taxes, before he can claim the benefits thereof, must have paid at least seven years in sucession, three of which must have been since the passage of the statute. It follows from this that where lands continue to be unimproved and uninclosed, and seven successive payments of taxes are made, the possession continues and becomes complete unless the possession be broken by adverse entry or by commencement of an action before the expiration of the seven-year period from the date of the first payment. It was not the intention of the lawmakers to make the act of paying taxes a character of possession of any greater force than that of actual possession, *possessio pedis.* Under the general statute of limitations, any character of possession must be continuous, and must be unbroken for the full period of seven years. We see no reason why a different construction should be placed upon the statute declaring the payment of taxes to be an act of possession. We are aware that there is some language in *Towson v. Denson, supra,* which might be construed as meaning that the payment of taxes one time was sufficient to constitute possession for a full year, and that seven payments constitutes possession for the

full period of seven years. But, as we have already shown, the court in that case was not dealing with possession which had been broken by actual entry or by the institution of an action before the expiration of the period of limitation. Therefore, that case is not an authority on the question now presented. The court did hold, however, that the person who paid taxes must, in order to invoke the benefit of the statute, do so through the general statute of limitations. And we think it necessarily follows from that conclusion that there must be an unbroken possession for a period of seven years from the date of the first payment, and that the mere payment of taxes seven times is not of itself seven years' possession, where the possession is broken by the commencement of an action within seven years after the date of the first payment. We are therefore of the opinion that appellee failed to show title by limitation.

The remaining question as to plaintiff's equitable right to have his title quieted to these four sections is whether he is barred by laches. He has paid taxes seven times in succession, but seven full years have not elapsed since he made the first payment. The record is silent as to who paid the taxes prior to the years mentioned in the stipulation filed in the case, so we must presume that the taxes were paid by the true owner. The lands have, in the meantime, become greatly enhanced in value. We have held that the payment of taxes for sufficient length of time, together with great enhancement in the value of the land, was sufficient, on account of the laches, to bar the right of the owner to seek equitable relief in quieting his title. *Turner* v. *Burke*, 81 Ark. 352; *Osceola Land Co.* v. *Henderson*, 81 Ark. 432. In those cases the full period of limitation had elapsed, but in the recent case of *Earle Improvement Co.* v. *Chatfield*, 81 Ark. 296, we said that "while it is true that the length of time during which a party may neglect to assert rights and not be guilty of laches varies with the peculiar circumstances of each case, and is subject to no arbitrary rule like the statute of limitations, yet, in the absence of supervening equities calling for the application of the doctrine of laches, a court of chancery could and will by analogy follow the law, and not divest the owner of the title by lapse of time shorter than the statutory period of limitations." The supervening equities referred to in that case

mean some element of estoppel aside from the mere lapse of time, payment of taxes and enhancement in value, for those elements were present in that case, and the court refused to apply the doctrine of laches as a bar to the plaintiff's rights.

We find nothing in the case at bar to justify us in holding that appellant's rights have been barred by laches covering a lapse of time short of the statutory period of limitations.

As already stated, the title to section 31 stands in a different attitude from that of the other sections. That section was sold under a decree of the chancery court in a suit instituted by the St. Francis Levee Board under the act of 1895. That was a proceeding *in rem,* or in the nature of a proceeding *in rem,* and the sale thereunder passed the title as to all persons. The confirmation decree cured any defect in those proceedings, if any existed.

The decree is therefore affirmed as to said section 31; but the same is reversed and remanded as to the undivided half of sections 29, 30, 32 and 33 claimed by plaintiff, with directions to enter a decree in favor of the plaintiff quieting his title thereto, subject to the right of appellees to recover the amount of taxes paid by them on said lands, and to have a lien declared thereon for said taxes.

BATTLE, J., (dissenting). Under the act of March 18, 1899. the effect of payments of taxes on unimproved and uninclosed land by a person having color of title thereto for seven successive years is the same as that of seven years' adverse possession. In *Towson* v. *Denson,* 74 Ark. 302, the Supreme Court held that each of such payments was equivalent to a year's possession. It follows that seven payments of taxes for so many successive years are equivalent to seven years of adverse possession, provided the land had continuously remained unimproved and uninclosed for that length of time, and during that time the taxes had been paid. How could such possession be broken after the seventh payment? I fail to see. I think *Towson* v. *Denson, supra,* is correct.

Opinion delivered June 17, 1907.

McCULLOCH J.    It is insisted by counsel for appellees on re-hearing that there is some evidence to the effect that appellant and those under whom he held failed, for many years before the seven tax payments covered by the stipulation in the record, to pay taxes on the lands in controversy; and also that there is affirmative evidence of an abandonment of the lands by J. J. Hornor, the former holder of the equitable title.    We have carefully re-examined the record on those points, and conclude that counsel are mistaken in this.    The record is absolutely silent concerning payment of taxes prior to the years covered by the stipulation, and, as we said in the original opinion, the presumption must be indulged that the taxes were paid by the true owner.

The only evidence in the record of an abandonment of the land is a statement by one of the witnesses, Mr. Coston, to the effect that he had been informed by one Phelan that Maj. Hornor had written him a letter saying that he did not claim any land in Mississippi County and would, for $25, give a quitclaim of any interest he might have.    Phelan did not testify, and this is purely hearsay.    It cannot form a basis for holding that Hornor abandoned a substantial interest in those valuable lands.

It is also contended that, appellees having alleged in their cross-complaint that appellant had failed to pay taxes for more than twenty-five years, the truth of that allegation must be treated as admitted because appellant did not answer the cross complaint.    The court should not have proceeded with the hearing of the cause without an answer to the cross complaint, but appellees waived the failure of appellant to answer by going to trial without insisting on an answer.    To do so was an election to treat the allegations of the cross complaint as issues in the case.    *Pembroke* v. *Logan,* 71 Ark. 362; *Cribbs* v. *Walker,* 74 Ark. 104; *Hardie* v. *Bissell,* 80 Ark. 74.

Petition for rehearing denied.