# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

OSCEOLA LAND COMPANY *v.* CHICAGO MILL & LUMBER COMPANY.

## Opinion delivered May 13, 1907.

| | |
|---|---|
| 84 | 1 |
| f87 | 363 |
| f87 | 402 |
| e87 | 493 |
| 84 | 1 |
| 89 | 143 |

1. TAX TITLE—WHO MAY QUESTION.—Under Kirby's Digest, § 7105, one who seeks to question the validity of a tax title must show that he or those under whom he holds had title at the time of the sale. (Page 8.)

2. SAME—EFFECT OF TAX DEED.—Under Kirby's Digest, § 7104, providing that a tax deed "shall vest in the purchaser all the right, title, interest and estate of the former owner in and to the land conveyed and also the right, title and claim of the State and county thereto, and shall be *prima facie* evidence that all the prerequisites of the law were complied with, * * * and that all things whatsoever required by law to make it a good and valid sale and to vest the title in the purchaser were done," a valid tax sale transfers, not only the title of the person in whose name the land was assessed for taxes, but the interests of all others therein. (Page 8.)

3. SAME—NOTICE OF SALE—CERTIFICATE OF PUBLICATION.— A tax title is void where the county clerk failed to certify on the record the publication of notice of sale of delinquent land, as required by Kirby's Digest, § 7086. (Page 8.)

4. SAME—EFFECT OF CONFIRMATION.—Though a tax sale was void for failure of the clerk to make a certificate showing publication of notice of sale of delinquent land, this irregularity was cured by a decree confirming such tax sale. (Page 8.)

5. SAME.—Where a tax title, though void for irregularity, has been confirmed in an adversary suit, the effect of the tax sale and decree of confirmation is merely to vest whatever title the defendants possessed in the plaintiff, but such decree does not conclude any one not a party to the suit. (Page 8.)

6. AFTER-ACQUIRED TITLE—EFFECT.—Under Kirby's Digest, § 734, providing that if any person shall convey real estate by deed purporting to convey same in fee simple, and shall not at the time of such con-

veyance have the legal estate in such lands, but shall afterward acquire the same, the legal or equitable estate afterward acquired shall pass to the grantee, *held* that where one executed a conveyance in fee simple with warranty to certain land owned by the State and subsequently acquired the equitable title thereto from the State, such after-acquired title passed to the grantee. (Page 9.)

7. SALE OF LAND—BONA FIDE PURCHASER—BURDEN OF PROOF.—Where a plaintiff sets up that he or his predecessors in title were *bona fide* purchasers, and shows that he or they paid a valuable consideration, the burden of showing that he or they purchased with notice is on the defendant. (Page 10.)

8. DEED—RECORD AS NOTICE.—The record of a deed of land owned by the State, the title to which the grantor subsequently acquired from the State, is constructive notice to all persons buying the land from the heirs of the grantor. (Page 11.)

9. TRUST—ENFORCEMENT—LACHES.—A trust will not be enforced against the patentee of State land and his privies where the alleged *cestuis que trust* for more than thirty years have done nothing to enforce the trust, and have paid no taxes and exercised no acts of ownership over the land. (Page 13.)

Appeal from Mississippi Chancery Court; *E. D. Robertson,* Chancellor; reversed.

STATEMENT BY THE COURT.

In February, 1855, Jeptha Fowlkes and wife conveyed by warranty deed section 14, township 15 north, range 8 east, in Mississippi County, Arkansas, to Ashley B. Rozell. At the time of this conveyance the land belonged to the State. Afterwards in 1856 Fowlkes entered the land and paid the consideration therefor and received a certificate of entry from the State. The evidence does not show what became of this original certificate, but Fowlkes died, and in 1870 his wife, who was the executrix of his estate, filed an affidavit that the certificate was lost, and the Commissioner of State Lands of this State issued a duplicate certificate, which was delivered to her.

In 1873 Mrs. Fowlkes and the heirs of Jeptha Fowlkes sold and conveyed the land to the Memphis & St. Louis Railroad Company.

In May, 1883, the railroad company sold and conveyed the land to W. H. Chatfield, and in September of the same year the

widow and heirs of Jeptha Fowlkes transferred the duplicate certificate of entry to Chatfield, and Chatfield obtained on this certificate a patent from the State conveying the land to him.

Chatfield died, leaving, as his heirs, A. H. Chatfield and May Chatfield Gilbert. Mrs. Gilbert in 1890 sold and conveyed her interest in the land to her brother, A. H. Chatfield.

In 1892 the land was sold for non-payment of taxes, and purchased by R. O. Culbertson, to whom a tax deed was executed in 1894.

In 1896 R. O. Culbertson sold and conveyed the land to one Boynton. Boynton brought an action in the Mississippi Chancery Court against L. D. Rozell and other heirs of A. B. Rozell to confirm the tax title under which he held and to confirm his title to the land. On the hearing the plaintiffs and defendants appeared by attorneys, and the court rendered a decree confirming the tax sale and quieting the title of the plaintiff as against the defendants. Boynton died, and his widow and heirs in 1902 conveyed the land to the Chicago Mill & Lumber Company.

A. B. Chatfield, who also claimed the land, was not a party to the action in which the confirmation decree above referred to was rendered. He sold and conveyed the land in 1904 to the Osceola Land Company, and this Company brought an action against the Chicago Mill & Lumber Company to cancel the tax title under which the Chicago Mill & Lumber Company claimed the land and to quiet the title of the plaintiff to the land.

The Chicago Mill & Lumber Company appeared and answered. On the hearing there was a decree in favor of the defendant, quieting its title to the land and dismissing the complaint of the Osceola Land Company for want of equity.

The defendant appealed.

*Chas. T. Coleman* and *J. T. Coston*, for appellant.

1. The proposition that the title of the Rozell heirs passed from them to Boynton by virtue of the decree against them in the case of Boynton *v.* Rozell's heirs is true as to the parties to that suit, but not as to third parties. The decree does not purport to establish title in the Rozells and pass it to Boynton. A decree can do no more than it purports to do. 88 S. W. 567. Judgments and decrees are binding between parties and privies

only, and a stranger cannot rely upon such judgment or decree as an estoppel, nor be estopped thereby.  84 Am. Dec. 485; 50 Am. Dec. 691; 29 Ala. 236; 22 Ala. 821; 52 Ark. 173; 4 Hun, 164; 27 Ore. 181; 40 Minn. 283.

If Chatfield had been made a party to that suit, he could have introduced the record of the tax sale which shows on its face that the sale was void.  He was deprived of opportunity to be heard, to cross-examine witnesses, or to introduce evidence.  15 Grat. 204.

2.  Appellee acquires no title by reason of payment of taxes for seven years consecutively, the first payment having been made January 6, 1898, and this suit commenced August 4, 1904. Seven full years must have elapsed after first payment before title is perfected.  Compare Arkansas and Illinois statutes on this subject.  Kirby's Digest, § 5057; 1 Wall. 638; 42 Ark. 93; 12 Ia. 186; 22 N. W. 844; 46 Ill. 521; 45 Ill. 391; 77 Ill. 269; 87 Ill. 259; 46 N. E. 748; 1 Wall. 643.

3.  The record of Rozell's deed from Fowlkes was no notice. 89 S. W. 470.  If the Memphis & St. Louis Railroad Company bought without notice, appellant stands in its position and succeeds to all its equities, and the burden is on appellee to show that the railroad company had notice of the deed from Fowlkes to Rozell.  35 Ark. 102; 31 Ark. 88; 113 Fed. 390; 82 Fed. 386; 102 Ill. 340; 31 Am. Rep. 723; 25 S. W. 829; 66 Me. 539.  If the burden were on appellant to show that the railroad company was a *bona fide* purchaser for value without notice, that burden was discharged by the introduction of the deed from the Fowlkes heirs reciting a consideration of two dollars per acre and acknowledging receipt thereof.  66 Miss. 636; 11 So. 688; 12 Atl. 908.  See also on the contention that appellant succeeds to the rights and equities of the railroad company, 2 Pomeroy, § 754, p. 1345; 49 Ark. 216; 25 S. W. 829; 73 Hun, 552; 82 N. Y. 477; 67 Am. Dec. 70.

3.  The presumption is that the Chatfield patent was issued to the party entitled to it.  39 Am. Dec. 678; 2 Head, 697; 120 U. S. 548; 88 S. W. 566.  Defendant is barred by laches.  12 Peters, 255; 12 Cranch, 513; 58 Fed. 990; 18 Wall. 508; 120 Fed. 830.

*W. J. Driver* and *W. J. Lamb,* for appellee.

1. The decree, taken in connection with the tax sale, even though void as alleged, constitutes a link in appellee's claim of title, and has the same force and effect as a conveyance by the heirs of Rozell. Kirby's Digest, § § 6521, 7104; 4 Wheat. 213; 106 Ga. 33; 31 S. E. 787. It was admissible in evidence to supply a link in the chain of title, though appellant's predecessor was not a party to the suit. 29 N. E. 896; 141 Ill. 215; 30 N. E. 320; 8 Ga. 354; 6 Har. & J. 182; 145 N. Y. 607; 2 Black on Judg. (2nd Ed.), § 607.

2. Chatfield had knowledge of facts sufficient to excite inquiry, regardless of the record of the deed, by virtue of the frequent conveyances by the Fowlkes heirs, and the record of the deed was in itself constructive notice. 21 Am. & Eng. Enc. of L., 584; 101 U. S. 141; 15 Pet. 93; 101 U. S. 260; 50 Ark. 327. It is a general rule that if a purchaser has not obtained the legal title before notice of the prior equity, even though by contract and patent without notice he has acquired an equitable title, he can not, after notice, acquire the legal title and thereby defeat or postpone the prior equity unless his own equity is of superior merit, but, in order to produce such a result, he must acquire not only the equitable, but also the legal, title, without notice. 23 Am. & Eng. Enc. of L., 519 and cases cited; 17 S. D. 637; 98 N. W. 166; 106 Am. St. Rep. 791. If Fowlkes had any interest at all, he was not only entitled to convey that interest, but whatever interest he afterwards acquired would also pass. Kirby's Digest, § § 731, 734; 4 Ark. 285; 15 Ark. 313; 16 Ark. 340. These statutes were in force prior to the entry by Rozell, while the act authorizing the assignment of the certificate of purchase, *Ib.* § 4749, was not passed until after the date of the conveyance from Fowlkes to Rozell. Hence an assignment of the original certificate to him would have been void; but, if it had been assigned, the assignee would have taken subject to any rights which had been conveyed to other persons under the law previously in force. 15 Pet. 93; 54 Ark. 148; 101 U. S. 260. If a patent is issued to one person when another has acquired the ownership of the land by purchase or otherwise, the person to whom the patent is issued becomes the trustee for the person entitled. 26 Am. & Eng. Enc. of L., 279, and note 9;

*Id.* 397, note 7; *Id.* 399, note 1; 75 Ark. 415. See also 16 Ark. 440; 20 How. (U. S.), 6. In this case the *ex parte* affidavit of Mrs. Fowlkes and the imperfect assignment and acknowledgment of the certificate constituted an imposition upon the State Land Commissioner, and Chatfield should be held to be the trustee for the Rozell title. 2 Black, 554; 128 U. S. 456; 1 Black, 132; 2 How. 284; 17 Ark. 701; 80 Ark. 391. Until the act of February 16, 1893, an attorney in fact could not convey the interest of a married woman. 39 Ark. 120. A patent issued by a ministerial officer is only *prima facie* evidence of title, and, such being the case, the certificate and assignment can both be inquired into. 27 Ark. 125; 40 Ark. 328; 39 Am. Dec. 512; 80 Am. Dec. 410.

3. The seven payments of taxes by appellee perfected its title. The words of the statute, "shall have paid taxes for at least seven years in succession," mean seven annual payments of taxes, and time is not the criterion. Compare § § 5057 and 665, Kirby's Digest; 68 Ark. 211; 74 Ark. 302.

4. As to the equities in the case, the patent to Chatfield had never been recorded, there is nothing in the record to show that Rozell or his heirs had any knowledge of the issuance of a patent to Chatfield, or that he claimed any interest in the land, which was wild and unimproved, and which the testimony shows he abandoned about 1896. Those claiming under the Rozell title have paid the taxes about sixteen years, while the Chatfield interest has paid them one year. Chatfield never recorded his patent until after this suit was institued. The property rapidly enhanced in value—2,000 per cent. in seven or eight years. Appellee and those under whom it claims asserted title affirmatively and defensively before appellant purchased. 18 Am. & Eng. Enc. Law, 102; 57 Am. St. Rep. 911; 91 U. S. 593; 96 U. S. 618.

*J. T. Coston* and *Murphy, Coleman & Lewis,* for appellant in reply.

1. The answer alleges fraud, but the only fraud suggested is an alleged presumption based solely upon the existence of the deed from Fowlkes to Rozell. This is not sufficient. 75 Ark. 420; 52 Ark. 156; 120 Fed. 819; 133 Fed. 826; 76 Ark. 525; 73 Ark. 30.

2.   Appellee's argument on the question of laches is based entirely on matters outside the record.

RIDDICK, J., (after stating the facts.)   This is an appeal from a decree of the Mississippi Chancery Court dismissing the complaint of the Osceola Land Company and quieting the title of the defendant, the Chicago Mill & Lumber Company, to a section of land in Mississippi County.   A history of the different titles under which this land is claimed by the two parties to this action is fully set out in the statement of facts, but it will be necessary to briefly restate it here.   In 1855 this land was owned by the State of Arkansas.   In that year Jeptha Fowlkes sold it to A. B. Rozell.   It does not appear that Fowlkes at that time had any interest in the land, though, judging from the fact that he sold it to Rozell and gave him a warranty deed for it, we think it is probable that he had made an application to purchase it from the State or intended to do so.   Rozell shortly afterwards recorded the deed from Fowlkes, and, the record having afterwards been destroyed, he had it recorded again, and it is still of record in Mississippi County.   About a year after Fowlkes conveyed to Rozell, Fowlkes entered the land from the State, paid for it and received a certificate of entry therefor.   Some years after this Fowlkes died, and his wife was appointed executrix of his estate.   In 1870 she made an affidavit that the original certificate of entry to the land was lost, and the State Land Commissioner issued and delivered to her a duplicate certificate.   She and the heirs of Fowlkes afterwards sold and conveyed the land to the Memphis & Little Rock Railroad Company.   This company sold and conveyed the land to W. H. Chatfield.   Mrs. Fowlkes and the heirs of Fowlkes assigned the duplicate certificate of purchase to Chatfield, and he in that way obtained a patent from the State.   The Osceola Land Company, the plaintiff in this action, holds under the Chatfield title.

The defendant, Chicago Mill & Lumber Company, holds under a tax title based on a sale of the land for non-payment of taxes in 1892.   This title was confirmed in an action brought by one Boynton against L. D. Rozell and other heirs of A. B. Rozell. The decree was not appealed from, and was a final adjudication that the tax title was valid as against the Rozell heirs.

But A. B. Chatfield, under whom the plaintiff claims title, was not a party to this confirmation suit and decree; and, if he had any title to this land, it was not affected by this decree. The plaintiff, which holds under Chatfield, brings this action to set aside and cancel the tax sale under which defendant holds.

In order to question the validity of the tax title, the plaintiff must show that those under whom it holds were the owners of the land or had some interest in it at the time it was sold for taxes. Kirby's Digest, § 7105. *Rhea* v. *McWilliams*, 73 Ark. 557. The defendant, which holds under the tax title, denies that it was void, but contends that, if it is void, the Rozell heirs, and not Chatfield, were the owners of the land, and that by virtue of the tax sale and confirmation decree the interests of the Rozell heirs was vested in the grantor of the defendant. Our statute under which this tax sale was made provides that a tax deed duly executed by the clerk of the county court "shall vest in the purchaser all the right, title, interest and estate of the former owner in and to the land conveyed and also the right, title and claim of the State and county thereto, and shall be *prima facie* evidence that all of the prerequisites of the law were complied with, * * * and that all things whatsoever required by law to make a good and valid sale and to vest the title in the purchaser were done." Kirby's Digest, § 7104.

A valid tax sale under this statute transferred not only the title of the Rozells, in whose name the land was assessed for taxes, but the interests of all others in the land, so as to give the purchaser a complete title. *Hefner* v. *Northwestern Life Ins. Company*, 123 U. S. 751.

After considering the objections urged against the tax title by plaintiff, we are of the opinion that the sale on which the tax title rests was void for the reason that the clerk of the county court did not make on the record a certificate showing publication of notice of sale of delinquent land as required by the statute. Kirby's Digest, § 7086.

But, though the tax sale may be void for the reasons stated, it has been confirmed, so far as the Rozell heirs are concerned, by a valid decree of a court having jurisdiction of the matter, and, so far as the interests held by these heirs, it must in this action be treated as a valid tax sale, for the defendant holds

under the party who obtained this decree. This is not in conflict with the decision in the case of *Updegraff* v. *Marked Tree Lumber Company,* 83 Ark. 154, for this confirmation decree confirmed the tax sale, and not the title of the defendant. Treating the tax sale as valid as to the Rozell heirs, then under the statute it vested the title of these heirs, whatever it was, in the purchaser at the tax sale. We do not mean by this that the purchaser at the tax sale holds under the Rozell heirs, or that he occupies the same position as if he had purchased from them. A purchaser of land from another may acquire the right to sue for breach of warranty or to bring an action for specific performance, or become vested with other legal or equitable rights foreign to the position of a purchaser at a tax sale. What we do say is that if the Rozells were the owners of this land, either in law or equity, the title that they held was, by virtue of the tax sale and confirmation decree, vested in the purchaser at the tax sale or his grantee. Plaintiff contends that this can not be so for the reason that the tax sale was void and could not affect the title, and the decree does not purport to divest the title. What it does purport to do is to confirm the tax sale, and the tax sale and deed purport to divest the title. The decree confirming this tax sale made it as to the Rozells a valid tax sale. It being as to them a valid sale, it transferred their title, if they owned the land, to the purchaser, and, without going into any further discussion as to the nature of a title acquired by a purchaser at a tax sale, we may say that, so far as this case is concerned, we can assume that the defendants own the Rozell title. This is true for the further reason that on the plaintiff rests the burden of proof, and, if it does not claim under the Rozells, to succeed it must show a title superior both to the title of the defendant and to that owned by the Rozells. Again, if the Rozells, and not Chatfield, were the owners of this land at the time it was assessed and sold for non-payment of taxes, then neither Chatfield nor the plaintiff was injured by that sale, and they have, under our statute, no standing in court to attack it. Kirby's Digest, § 7105. It will therefore be necessary to consider whether the Rozells or the Chatfields were the owners of the land at that time.

As Fowlkes conveyed this land to A. B. Rozell by warranty

deed, and afterwards purchased it from the State, paid for it and obtained a certificate of entry, the statute vested this after-acquired title in Rozell, who thus became in equity the owner of this land, the State holding the legal title as trustee for him. Kirby's Digest, § 734. While the title was in this condition, Fowlkes died, and his widow, who was the executor of his estate, obtained a duplicate certificate. She and the heirs then sold and conveyed the land to a railroad company, this company conveyed to Chatfield, and Chatfield obtained from the widow and heirs of Fowlkes an assignment of the duplicate certificate of entry, and with it procured a patent from the State.

The plaintiff contends that the railroad company and Chatfield were both *bona fide* purchasers for value without notice of the Rozell title, and the question is presented whether the burden to show notice was on the defendant or not. In the recent case of *Steele* v. *Robertson*, 75 Ark. 228, where parties came in as interveners and in order to obtain protection alleged affirmatively that they were *bona fide* purchasers for value without notice, we said that the burden was on them to make out their case, and to show, not only that they had paid for the land, but that they did so without notice of plaintiffs' right. When in such a case there are circumstances that tend to show notice, or tend to raise an inference of notice, and the party who claims to be a *bona fide* purchaser fails in his testimony to deny notice, this may be, as we held in that case, a controlling circumstance against him, without regard to who has the burden of proof. This was probably as far as we should have gone in that case, although the law as there stated is supported by a number of cases. *Bell* v. *Pleasants*, 145 Cal. 410; *Beattie* v. *Crewdson*, 124 Cal. 577; *Wilhoit* v. *Lyons*, 98 Cal. 409; *Farley* v. *Bateman*, 40 W. Va. 542; *Connecticut Mut. Life Ins. Co.* v. *Smith*, 117 Mo. 261. But a further consideration of the case has convinced us that the statement that the burden is on the party claiming to be a *bona fide* purchaser to show want of notice is not correct as a general rule; for, when the party relies on the defense of being a *bona fide* purchaser, and shows that he has paid a valuable consideration, the burden of showing that he purchased with notice is on the party alleging it or who relies

on the notice to defeat the claim of *bona fide* purchaser. *Pearce v. Foreman,* 29 Ark. 563; *Walter* v. *Brown,* 115 Iowa, 360; *Hodges* v. *Winston,* 94 Ala. 576; *Barton* v. *Barton,* 75 Ala. 400; *Anthony* v. *Wheeler,* 17 Am. St. Rep. 281, and note; 2 Pomeroy's Equity .(3 Ed.), § 759, and note, where the cases are collated. So in this case we think that the burden to show that the railroad company and Chatfield had notice of the conveyance from Fowlkes to A. B. Rozell is on the defendant, for it alleges that fact in order to defeat the title acquired through the purchase of the railroad company and Chatfield. This case is very different from the case of *Steele* v. *Robertson,* above referred to. In that case the party who alleged that he purchased without notice was a party to the action. His failure to testify that he did not have notice was a circumstance against him. But in this case one .of the parties charged with notice has been dead for years, and the other is a corporation, and neither of them are' parties to the suit, and whether they had notice or not is probably as well known to defendant as to plaintiff.

But was notice to these parties not shown by the fact that the deed from Fowlkes to Rozell was of record at the time that the railroad company bought from the Fowlkes heirs, and when Chatfield bought from the railroad company? In the case of *Rozell* v. *Chicago Mill & Lumber Company,* 76 Ark. 528, in speaking of the title to land affected by the same conveyances, we said that the record of the deed from Fowlkes to Rozell was not notice to the defendants who purchased from Chatfield, for the reason that such deed was not in, the· line of their title. Chatfield held under a patent from the State, and those who purchased from him could, in the absence of actual notice, rest upon the presumption that the officers of the State had 'done their duty and issued the patent to the person entitled to receive it, and for this reason such purchasers were not required to search the records for conveyances not only before the issuance of the patent, but before the State had made any sale of the land, or any contract affecting its title thereto.

Under this decision the record of the deed from Fowlkes to Rozell was not constructive notice to the Osceola Land Company, for it purchased from Chatfield. But that is of no importance now, for it was admitted that this company had actual

notice of the deed from Fowlkes to Rozell before it bought from
Chatfield.   The question here is whether the record of this deed
was notice to the railroad company and to Chatfield at the time
of their purchases.   In *Rozell* v. *Chicago Mill & Lumber Com-
pany,* just referred to, we said that "probably" it was not notice
to these parties.   But it is was unnecessary to decide the ques-
tion in that case, and the language used indicates that the court
did not wish to express a decided opinion as to whether the re-
cord of the deed was notice to those parties or not.   But the
question is brought squarely before us in this case, and after
further consideration we think that the position of the railroad
company and Chatfield are not the same as those who purchased
from Chatfield after he acquired the patent from the State.   The
railroad company purchased from the Fowlkes heirs, and Chat-
field purchased from it before the patent had been issued.   At
the time they purchased, the deed from Fowlkes to Rozell was
of record, showing that neither Fowlkes nor his heirs had any
interest in the land.   It is true that the deed from Fowlkes
had been executed before he purchased the land from the State,
but, so soon as he purchased and paid for the land, the equitable
title thus obtained passed at once by virtue of the statute from
him to Rozell the grantee in his deed.   Kirby's Digest, § 734.
A purchaser from Fowlkes or from his heirs should have taken
notice of this statute and the fact that he might have conveyed
the land before he obtained his certificate of entry from the
State, and should have searched the records for such convey-
ances.   As this deed was of record at that time, we are of the
opinion that both the railroad company and Chatfield must in
this case be treated as purchasers with notice. *Bernardy* v.
*Colonial Mortgage Company,* 17 S. Dak. 637, 98 N. W. 166, 106
Am. St. Rep. 791; *Tefft* v. *Munson,* 57 N. Y. 97; *Warburton* v.
*Mattox,* Morris (Iowa), 367.

This brings us to a consideration of the effect of the patent
issued by the State to Chatfield.   There is a presumption that
the State officers examined the facts and issued the patent to the
proper person, and the only question here is whether the facts
and circumstances in proof are sufficient to overturn that pre-
sumption.   I was inclined to the opinion that those facts do
show that this patent was issued to Chatfield through mistake,

and that he should be treated as a trustee for the Rozell heirs; but it is unnecessary to state the reasons for this opinion, for the majority of the court have come to a different conclusion. They are sustained by the fact that, though this duplicate certificate was issued to the Fowlkes heirs in 1870, and though the heirs of Fowlkes and those holding under them have claimed the land since, there is nothing in the record to show that the Rozell heirs have ever asserted any 'acts of ownership over this land from that day to this, except that they resisted the action of Boynton to confirm a tax title he had acquired to the land. But their conduct in this respect was not antagonistic to the title asserted by those who claim under Chatfield, for, if valid, the tax title would have cut off both the Rozell and the Chatfield title. Although the duplicate certificate was issued in 1870, and the patent to Chatfield in 1883, and though defendant claims that the Rozells were the owners of the land prior to 1870, and from that time to the tax sale in 1902, yet it does not appear that during all that time they ever paid the taxes on it even for a single year, or exercised over it any acts of ownership whatever. This conduct on their part tends to show that they had abandoned the land, or disposed of it in some way, and the majority of the court are of the opinion that these circumstances tend to support the presumption in favor of the regularity of the patent issued by the State officials. They think that, after this long delay, when W. H. Chatfield, A. B. Rozell and most of the other parties connected with the earlier history of the title to this land are dead, the presumption which attaches to the regularity of the issuance of this patent has become conclusive, and under the facts as shown in the record the court must assume that Chatfield, by the purchase from the railroad company, the transfer of the duplicate certificate by the Fowlkes heirs, and the issuance of the patent from the State to him, acquired not only the legal but the equitable title to the land in controversy.

As Chatfield was the owner of the land at the time of the tax sale and confirmation decree, his title was not affected by either, for he was not a party to the confirmation suit, and was not affected by the decree against the Rozells, and as we have said the tax title was void. But the tax deed, though based on a void sale, was color of title under which the holder might

acquire title by adverse possession for the statutory period, either by actual possession or by the constructive possession which the statute gives to those paying taxes under color of title on wild and unimproved lands. But, though the land was wild and unimproved, yet defendant and those under whom it holds had not paid taxes continuously for seven years before this action was commenced, and the action is not barred. *Updegraff* v. *Marked Tree Lumber Company,* 83 Ark. 154.

The tax sale and deed was a cloud on the title of the plaintiff in this case. The majority of the court are therefore of the opinion that the Osceola Land Company was entitled to the relief asked, and that the chancellor erred in dismissing its complaint for want of equity.

Judgment reversed and cause remanded, with an order that a decree be entered cancelling the tax deed under which the defendant holds and quieting the title of plaintiff.

BATTLE and McCULLOCH, JJ., dissent.