SCHMELTZER *v.* SCHEID.

4-6503                                             157 S. W. 2d 193

Opinion delivered December 8, 1941.

*H. B. Stubblefield,* for appellant.

*Taylor Roberts,* for appellee.

SMITH, J. This litigation involves the title to blocks 8 and 9, Schattler's Second Addition to the city of North Little Rock. This second addition was platted in 1907, at which time the blocks in question were a part of a larger tract of land which comprised the addition, all owned by Charles Schattler and his wife, who, on August 10, 1912, mortgaged the entire addition. At the sale under the decree foreclosing the mortgage, John Schmeltzer became the purchaser and received a deed from the commissioner who conducted the sale. Schmeltzer was not a party to the foreclosure suit, but was a third party. Schmeltzer continued to own the property until his death in 1931, and his heirs-at-law have never conveyed the title which they inherited from their ancestor. Without color of title, P. H. Scheid began to pay the taxes on the two blocks above described in 1916, and paid the taxes thereon continuously, including those of the year 1939. Between these years, both inclusive, Scheid paid the general taxes for 24 years, and during all this time the blocks were unenclosed, unimproved, and not in the actual possession of any one.

Schmeltzer, during his lifetime, and his heirs since his death, have paid the taxes on the lots surrounding the two blocks under the impression that they were also pay-

ing the taxes on the two blocks, and did not discover, until they undertook to sell the entire property, that Scheid, and not they, had, during all these years, been paying the taxes on two blocks.

Scheid filed suit praying that his title be quieted under the provisions of § 8921, Pope's Digest. He was accorded the relief prayed, and Schmeltzer's heirs, who had been made parties, have prosecuted an appeal from that decree.

The appeal, therefore, involves the construction of this statute, and its application to the facts herein stated.

Legislation of this character had its inception in this state in the passage of act 65 of the Acts of 1899, p. 117, entitled, "An act for the protection of those who pay taxes on land," and this act appears as § 8920, Pope's Digest, and reads as follows: "Unimproved and unenclosed land shall be deemed and held to be in possession of the person who pays the taxes thereon if he have color of title thereto, but no person shall be entitled to invoke the benefit of this act unless he and those under whom he claims shall have paid such taxes for at least seven years in succession, and not less than three of such payments must be made subsequent to the passage of this act."

This act was upheld in the case of *Towson* v. *Denson,* 74 Ark. 302, 86 S. W. 661. It was there said that Kirby's Digest, § 5061 (§ 8925, Pope's Digest), providing, in effect, that no action for the recovery of lands forfeited for taxes "shall be maintained unless it appears that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the lands in question within two years next before the commencement of such suit," contemplates actual, and not constructive, possession. Here, during nearly a quarter of a century, during all of which time appellee has been paying the taxes on the two blocks in question, appellants and their ancestor have had only the constructive possession attending the ownership of the title. This holding in the Towson case has since been consistently followed: *Price* v. *Greer,* 76 Ark. 426, 88 S. W. 985; *Cottonwood Lbr. Co.* v. *Hardin,* 78

Ark. 95, 92 S. W. 1118; *Hardie* v. *Bissell,* 80 Ark. 74, 94 S. W. 611; *Wheeler* v. *Foote,* 80 Ark. 435, 97 S. W. 447; *Earle Improvement Co.* v. *Chatfield,* 81 Ark. 296, 99 S. W. 84; *Updegraff* v. *Marked Tree Lbr. Co.,* 83 Ark. 154, 103 S. W. 606; *Wyse* v. *Johnston,* 83 Ark. 520, 104 S. W. 204; *Rachels* v. *Setcher Cooperage Works,* 95 Ark. 6, 128 S. W. 348; *Paragould Abstract & Real Estate Co.* v. *Coffman,* 100 Ark. 582, 140 S. W. 730, L. R. A. 1915B, 1006; *Fenton* v. *Collum,* 104 Ark. 624, 150 S. W. 140; *Brasher* v. *Taylor,* 109 Ark. 281, 159 S. W. 1120; *Wells* v. *Rock Island Improvement Co.,* 110 Ark. 534, 162 S. W. 572; *Reynolds* v. *Snyder,* 121 Ark. 33, 180 S. W. 752, 183 S. W. 979; *Union Sawmill Co.* v. *Pagan,* 175 Ark. 559, 299 S. W. 1012.

The act of 1899, by its express terms, applies only to persons who pay taxes under color of title, but its obvious and declared purpose was to encourage the payment of taxes and to protect persons who pay them.

For the same purpose the General Assembly sought to afford protection to persons who, for fifteen or more consecutive years, paid taxes on land without possessing color of title. To that end act 199 was passed at the 1929 session of the General Assembly, volume 2, Acts of 1929, p. 1001, and appears as § 8921, Pope's Digest. This act is entitled, "An act for the protection of persons paying taxes on wild and unimproved land," and, in its entirety, reads as follows: "Payment of taxes on wild and unimproved land in this state by any person or his predecessor in title, for a period of fifteen consecutive years (at least one of said payments being made after the passage of this act), shall create a presumption of law that such person, or his predecessor in title, held color of title to said land prior to the first payment of taxes made as aforesaid, and that all such payments were made under color of title."

These statutes (§§ 8920 and 8921, Pope's Digest) deal with the same subject, and have a common purpose, that is, to encourage the payment of taxes, and to protect those who pay them, although the acts are applicable to different conditions, the one to persons who

pay taxes under color of title, the other to persons who pay without having color of title, and we are of opinion, therefore, that the holding in the case of *Towson* v. *Denson, supra,* is as applicable to the latter act as it was to the earlier one, which that case upheld. The 7-year statute contemplates that the taxpayer has only color of title, and that neither has the actual title; while the 15-year statute applies to those cases where the taxpayer has no title at all.

Now, this court has several times said, as, for instance, in the case of *Fletcher* v. *Malone,* 145 Ark. 211, 224 S. W. 629, that the mere payment of taxes, however long continued, would not confer title; but the effect of the acts quoted, if any effect is to be given them, is this, that this is no longer the law in the circumstances to which these acts are applicable. One may acquire title by tax payments in the case of the person having color of title by seven consecutive tax payments, and in the case of the person having no color of title by fifteen consecutive tax payments, provided the land paid on is wild, unoccupied, unenclosed, and unimproved during ·all the time these payments are being made.

We quote from the case of *Union Sawmill Co.* v. *Pagan,* 175 Ark. 564, 299 S. W. 1012: "In *Paragould Abstract & Real Estate Co.* v. *Coffin,* 100 Ark. 582, 140 S. W. 730, L. R. A. 1915B, 1006, quoting from *Updegraff* v. *Marked Tree Lbr. Co.,* 83 Ark. 154, 103 S. W. 606, we said: 'It will be observed that the act merely declares that the person who pays the taxes on unimproved and unenclosed lands shall be deemed to be in possession thereof if he had color of title. The statute does not undertake to fix the period of limitation, but merely declares the continuous payment of taxes under color of title to be possession, and leaves the general statute of limitations applicable thereto. The only proviso or condition in the act is that the person who pays the taxes, before he can claim the benefits thereof, must have paid at least seven years in succession, three of which must have been since the passage of the statute. It follows from this that, where lands continue to be unimproved and unenclosed, and seven successive payments of taxes

have been made, the possession continues and becomes complete, unless the possession be broken by adverse entry or by commencement of an action before expiration of the seven-year period from the date of the first payment. By such payment of taxes under color of title appellee acquired a valid title thereto as against appellants and all others, as has often been held by this court; (citing cases)'."

Now, the act of 1929 supplements the act of 1899, and it does so by creating a presumption, not of fact, but of law, that one who pays taxes for fifteen consecutive years had color of title prior to the first payment. It is conceded that appellants have the original paper title, but both acts contemplate that this would be true in all cases to which their provisions apply. This was true in the Towson case and in all the numerous cases which have followed and upheld the Townson case, which last mentioned case thoroughly discussed the validity of the first act, and if the first act was valid we perceive no reason why the second act is not also valid.

Appellants allege, and the allegation is not disputed, that they thought they had paid the taxes every year on the two blocks in question, but it will require no argument to show that one may not discharge his obligation to pay his taxes by showing that he thought he had paid them when his misapprehension was not induced by some officer charged with the duty of collecting the taxes, and no such contention is made here. It is undisputed that the blocks in question were a part of the subdivision on the balance of which appellants had paid taxes; but it is true also that these blocks have been segregated and had a separate entity by the subdivision of the property through the survey and plat thereof into blocks and lots, and were separately assessed.

The headnote to the case of *Wells* v. *Rock Island Improvement Co.*, 110 Ark. 534, 162 S. W. 572, reads as follows: "Appellant held actual possession of fifteen acres only of a forty-acre tract of land, and appellee, by virtue of the payment of taxes, held constructive possession of the remainder of the tract: the two portions

of the tract were assessed for taxes separately. *Held,* appellee having fulfilled the conditions imposed by Kirby's Digest, § 5057, is vested with the title to the portion of the tract on which he had paid taxes the statutory period."

The question was raised in our consultation whether the act of 1899 and the act of 1929, or either of them, applies to urban property, or must be held as applicable only to rural property.

The basis of this question is that the act of 1899 provides that unimproved and unenclosed land shall be deemed and held to be in the possession of the person who pays the taxes thereon, and that the act of 1929 relates to the "payment of taxes on wild and unimproved land in the state," and it has been inquired whether a town lot can be said to be wild and unimproved land within the meaning of the statute.

To properly construe these acts we must ascertain the legislative intent in passing them. Certainly, a town lot is land, and is assessed as real estate. Is it not just as essential to the support of the government that taxes be paid on urban as well as on rural land? Can it be supposed that the General Assembly intended to give the urban owner immunity from his obligation to pay taxes and of permitting another to discharge the burden imposed upon the landowner, while denying that immunity to the rural owner? To so hold would be to impute to the General Assembly an intention to make a discrimination which is unjust and for which no excuse could be offered, and it is opposed to the manifest purpose of both acts.

It was said in the case of *Fenton* v. *Collum,* 104 Ark. 624, 150 S. W. 140, that "This court has used the word 'wild' interchangeably with the words 'unimproved and unenclosed,' relative to lands claimed under said statute, and held that a finding that lands were wild was sufficient to show that they were 'unenclosed and unimproved.' *Towson* v. *Denson, supra; Rachels* v. *Stecher Cooperage Co., supra.*"

In the case of *Moore* v. *Morris,* 118 Ark. 516, 177 S. W. 6, it was said: ''The statute relates to the condition of the lands at the time the payment of taxes is made under color of title, regardless of the former state of the lands; and if at that time they are unimproved and unenclosed, that is to say in a wild state as before the improvements were first made, then they fall within the terms of the statute and such payments amount to occupancy which will in course of time ripen into title by limitation. *Fenton* v. *Collum,* 104 Ark. 624, 150 S. W. 140.''

In 65 C. J., pages 1239 and 1240, the words ''Unimproved'' and ''Unenclosed'' are defined, and a number of our cases are cited to the effect that these words and the word ''wild'' have been used interchangeably, and we think they were used interchangeably in §§ 8920 and 8921, Pope's Digest, and both sections relate to the same condition of the land so far as possession is concerned, both applying where the owner of the land has no possession thereof, while the taxes were being paid, except the constructive possession incident to the ownership of the title.

We conclude, therefore, that § 8921, Pope's Digest, as well as § 8920, Pope's Digest, applies to urban as well as rural unoccupied, wild, or unenclosed land, and that the decree of the court below so holding should be affirmed, and it is so ordered.