PATTILLO *v.* INTERNATIONAL PAPER COMPANY.

4-8040 199 S. W. 2d 307

Opinion delivered January 13, 1947.

*J. B. Milham* and *Gladys Wied,* for appellant.

*Gaughan, McClellan & Gaughan,* for appellee.

HOLT, J. Appellants are the only lawful heirs of Lee Smith, deceased. They brought suit to recover a tract of land which was a part of a 160 acres their father, Lee Smith, had homesteaded. Lee Smith made his homestead entry November 18, 1901, and received his patent from the U. S. Government July 1, 1903. December 8, 1902, Lee Smith and his wife executed a quitclaim deed to 120 acres of this land—except three acres—to S. W. Giles, and on May 9, 1903, they executed a warranty deed to the Wisconsin-Arkansas Lumber Company to 30 acres of the land in controversy, leaving 13 acres of his homestead. Lee Smith cleared and fenced this 13 acres, built a house thereon, and resided on it until 1942 when he moved away. He did not convey this 13-acre tract to any

one, but had mortgaged 10 acres of it, which he lost through foreclosure. He also owned 89 acres of land about a mile from the 13-acre tract, which he farmed while he lived on the 13 acres.

S. W. Giles and wife, on February 18, 1904, executed a warranty deed to the Wisconsin-Arkansas Lumber Company to the land described in the quitclaim deed, *supra,* and this land, together with that conveyed to the Wisconsin-Arkansas Lumber Company was by mesne conveyance conveyed to appellee, paper company.

It was the contention of appellants below, and here on appeal, that the deeds executed by Lee Smith and wife to S. W. Giles and the Wisconsin-Arkansas Lumber Company were void because issued prior to the date on which Smith received his patent from the Government, and also that Smith acquired title to the land involved by adverse possession.

Appellee (defendant below) pleaded estoppel, based on the deeds executed by appellants' ancestor, Lee Smith, laches and the statute of limitations, or adverse possession for seven years.

From a decree in favor of appellee comes this appeal.

The trial court, among other things, found: "There is no substantial testimony that Lee Smith, after executing the conveyances to S. W. Giles and the Wisconsin-Arkansas Lumber Co. ever claimed to own any part of these lands or held it adversely except the 13 acres, which he afterwards mortgaged, and which mortgage was foreclosed and the land sold. There is one outstanding fact in connection with the question of the alleged adverse holding of Lee Smith which clearly indicates that he never held any of the land adversely to the parties to whom he had sold same. The certificate of Reece A. Parham, circuit and county clerk of Dallas county, Arkansas, shows that continuously after the two deeds executed to S. W. Giles and the Wisconsin-Arkansas Lumber Co. he paid taxes only on 10 acres of this tract of land, which he was retaining as a homestead."

We think these findings were not against the preponderance of the testimony. A preponderance of the evidence also shows that the land involved was wild, unimproved and uninclosed, and had been owned by various lumber companies that have cut timber from it and paid taxes on it.

The decree contained this recital: " . . . The defendant (appellee) and its predecessors in title have paid taxes on said lands under color of title for more than seven years and thereby held adverse possession of said lands for more than seven years and plaintiffs' claim is barred by the Statute of Limitations and that plaintiffs' cause of action should be dismissed for want of equity."

Conceding, without deciding, that the deeds, *supra*, executed by Lee Smith and wife conveyed no equity in, or title to, the property involved as appellants argue, since the land was wild, unimproved and uninclosed, and appellee and its predecessors in title have paid the taxes thereon for seven years—in fact for more than forty years—in succession under color of title, it, appellee, has acquired title to the property involved by such payment of taxes.

Section 8920 of Pope's Digest provides: "Unimproved and uninclosed land shall be deemed and held to be in possession of the person who pays the taxes thereon if he have color of title thereto, but no person shall be entitled to invoke the benefit of this act unless he and those under whom he claims shall have paid such taxes for at least seven years in succession, and not less than three of such payments must be made subsequent to the passage of this act. Act March 18, 1899."

This court, in *Union Sawmill Company* v. *Pagan*, 175 Ark. 559, 299 S. W. 1012, (at page 564 of the opinion) referring to § 6943, Crawford & Moses' Digest, now § 8920 of Pope's Digest, said: "In *Paragould Abstract & Real Estate Co.* v. *Coffin*, 100 Ark. 582, 140 S. W. 730, L. R. A. 1915B, 1006, quoting from *Updegraff* v. *Marked Tree Lbr. Co.*, 83 Ark. 154, 103 S. W. 606, we said: 'It

will be observed that the act merely declares that the person who pays the taxes on unimproved and uninclosed lands shall be deemed to be in possession thereof if he have color of title. The statute does not undertake to fix the period of limitation, but merely declares the continuous payment of taxes under color of title to be possession, and leaves the general statute of limitations applicable thereto. The only proviso or condition in the act is that the person who pays the taxes, before he can claim the benefits thereof, must have paid at least seven years in succession, three of which must have been since the passage of the statute. It follows from this that, where lands continue to be unimproved and uninclosed, and seven successive payments of taxes have been made, the possession continues and becomes complete, unless the possession be broken by adverse entry or by commencement of an action before expiration of the seven-year period from the date of the first payment. By such payment of taxes under color of title appellee acquired a valid title thereto as against appellants and all others, as has often been held by this court; (citing cases).'" See, also, *Schmeltzer* v. *Scheid,* 203 Ark. 274, 157 S. W. 2d 193.

We conclude, therefore, that appellants have no title or right to possession of the land involved, and accordingly, the decree is affirmed.